**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Scott Alan DAVIS, Appellant.**

Superior Court of Pennsylvania.

Submitted June 28, 1999.
Filed Aug. 25, 1999.

Nuria Sjolund, Asst. Public Defender, Easton, for appellant.

Jay W. Jenkins, Asst. Dist. Atty., Easton, for Com., appellee.

Before McEWEN, President Judge, CERCONE, President Judge Emeritus, and HESTER, J.

CERCONE, President Judge Emeritus:

¶ 1 This is a direct appeal from the judgment of sentence entered in the Court of Common Pleas of Northampton County after a jury convicted Appellant, Scott Alan Davis, on one count of stalking. 18 Pa.C.S.A. § 2709(b).[1] For the reasons that follow, we affirm.

---

1. A person commits the crime of stalking     when he engages in a course of conduct or

¶ 2 In late December, 1997, the victims in this case, Kelly and Keith Kraycar, filed a written criminal complaint alleging that Appellant (Mrs. Kraycar's former husband) engaged in a course of conduct amounting to the crimes of harassment and stalking. According to the police report, the incidents so alleged were the culmination of years of domestic violence which resulted in more than one Protection from Abuse Order. The police report also noted that Appellant and Mrs. Kraycar were embroiled in a nasty and protracted custody battle in another county. The police arrested Appellant on January 7, 1998 and the matter proceeded to a jury trial before the Honorable James C. Hogan in July of that year.

¶ 3 At trial, Mrs. Kraycar testified that that she had known Appellant since she was twelve years old, and that two children were born of their marriage, Tara and Scottie. N.T. Trial, 7/14/98, at 13–14, 43. Mrs. Kraycar also stated that she separated from Appellant in February of 1995 because he was very abusive to her physically and mentally. Id. at 13–14. She testified that after she left him, Appellant telephoned her on a recurrent basis threatening to break her "f* * * * *g legs" and kill her because she was a "little bitch," a "whore," and a "slut." Id. at 14–16, 54.[2] Even after Mrs. Kraycar moved several times, obtaining an unlisted telephone number on each occasion, Appellant was able to learn her new telephone number and thus find her over and over again. Id. at 16, 18. Mrs. Kraycar eventually decided to disconnect the telephone and live without telephone service because she could not prevent Appellant from re-

peatedly contacting her and issuing death threats. Id. at 18. Appellant made many attempts to get Mrs. Kraycar's new address after each move, sometimes preventing her from seeing their children if she refused to disclose it. Id. at 24.

¶ 4 On many occasions, Mrs. Kraycar and her second husband, Keith, observed footprints and other signs that an unidentified person had been near their vehicle, or had tampered with their storm door or screen door in their absence. Id. at 19, 30. They feared that it was Appellant, because they had observed his vehicle parked outside their home on many occasions. Id. at 56. Mrs. Kraycar also stated on the record that she was unaware of any person other than Appellant who had issued death threats to her. Id. The Kraycars moved seven times in a two year period attempting to escape from Appellant and/or the unidentified intruder. Id. at 19.

¶ 5 On August 22, 1997, the Kraycars were walking on Scott Street in Carbondale with their five month old baby, who was in a stroller. Id. at 19. Appellant drove by the Kraycars three times in rapid succession: the first time, Appellant laughed and held up his middle finger at them; on the second passage, Appellant spat at them. Id. at 20. On the third round, Appellant aimed his vehicle at the Kraycars, hit the gas hard, and "came at" the victims very quickly. Id. Mr. Kraycar was forced to pick the stroller up and jump out of the vehicle's way in order to protect himself and the baby. Id. at 20.[3]

¶ 6 Mrs. Kraycar discussed several incidents involving the children which required her to request the intervention of

repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place the person in reasonable fear of bodily injury, **or** an intent to cause substantial emotional distress to the victim. 18 Pa.C.S.A. § 2709(b)(1) and (2).

**2.** Mrs. Kraycar indicated that Appellant also left messages to this effect on her telephone

answering machine. N.T. Trial, 7/14/98, at 14–16.

**3.** Appellant's paramour, Christine Harhut, verified that on the date in question, Appellant drove down Scott Street in Carbondale and passed the Kraycars three times within a few minutes. However, Ms. Harhut denied that Appellant made an obscene gesture, spat at the Kraycars, or aimed his vehicle at them. N.T. Trial, 7/15/98, at 17–23, 34–42.

police officers to protect either herself, Mr. Kraycar, or one of the children, or to force Appellant to relinquish the children into her custody. *Id.* at 22–23. She also stated that there were many times when she came to Appellant's home to pick up the children for visitation, but Appellant would not permit them to leave with her. *Id.* at 43. At one point, Mrs. Kraycar applied for, and was granted, a Protection from Abuse order on behalf of her children. *Id.* at 14, 54–56. Eventually, a judge of the Family Division of the Court of Common Pleas of Lackawanna County appointed a guardian ad litem to supervise the safety of Tara and Scottie, and to deal with Appellant's refusal to permit Mrs. Kraycar's attempts to visit them. *Id.* at 52.

¶ 7 Mrs. Kraycar testified that as a result of Appellant's constant threats to her and her family, she became terrified over simple things, like the unexpected ringing of her doorbell. *Id.* at 26, 47. She stated that she was afraid for the life of her baby when an unanticipated visitor rang the doorbell, and that she was tired of being so scared all the time. *Id.* at 27. Mrs. Kraycar also testified that the stress caused by Appellant's behavior caused her to suffer from panic and anxiety attacks, and that she had been forced to go into counseling to deal with the situation. *Id.* at 28–29.

¶ 8 Mr. Kraycar corroborated his wife's testimony in all essential aspects. *Id.* at 68–95, 100–108, 110–125 (testimony of Keith Kraycar). He stated that he now suffers from hypertension and anxiety as a result of Appellant's behavior. *Id.* at 80. Mr. Kraycar further testified that he is not physically afraid of Appellant on a "one-on-one" basis. However, he feared what Appellant was capable of doing with a motor vehicle and "everything else" that Appellant might do. Specifically, Mr. Kraycar said he was concerned for his own

safety and feared for his family. *Id.* at 81–82.

¶ 9 Appellant's twelve year old daughter, Tara, testified that her father scared her when he was drinking. *Id.* at 127. She also feared him because of his "yelling and screaming" at her on an occasion when he tried to force her to disclose where her mother was living at the time. *Id.* at 127. Tara further stated that Appellant prevented her from seeing her mother, and that Appellant and his paramour forced her to hide in a cellar so that her mother could not find her. *Id.* at 127, 129. Appellant's nine year old son, Scottie, testified that he was scared of his dad because Appellant threw him against a house in retaliation for his desire to visit with his mother. *Id.* at 142, 143.[4]

¶ 10 On July 15, 1998, the jury found appellant guilty of one count of stalking. The Trial Court ordered a mental health evaluation and a pre-trial report. Judge Hogan conducted a sentencing hearing on September 18, 1998. On that date, the Trial Court sentenced Appellant to serve four (4) to forty-eight (48) months in the Northampton County Prison, to pay the costs of the prosecution and a one thousand dollar ($1,000) fine. N.T. Sentencing Hearing, 9/18/98, at 19. Judge Hogan additionally directed that upon parole, Appellant was prohibited from all contact with the victims in this case, whether by telephone or in person. He also recommended on the record that the Pennsylvania Board of Parole impose electronic surveillance and place Appellant on curfew so that he would be prohibited from leaving his residence after 6 p.m., and that intense supervision should continue throughout any term of parole. *Id.* at 19–20.

¶ 11 Appellant filed a timely motion requesting modification of sentence. The Trial Court denied relief on September 28, 1998. Appellant's timely notice of appeal

---

4. The certified record indicates that Judge Hogan properly referred the substance of the children's testimony on these matters to the Family Division of the Court of Common

Pleas of Lackawanna County, the venue of the custody proceeding concerning the parties' children. *See* Criminal Division Notes, docketed 7/14/98.

followed on October 14, 1998. Represented by the same attorney who served as defense counsel at his trial, Appellant presents two issues for our consideration:

A. WHETHER THE TRIAL JUDGE ERRED IN ADMITTING EVIDENCE, AT TRIAL, OF DEFENDANT'S CRIMINAL CHARGE.

B. WHETHER THE TRIAL JUDGE ABUSED HIS DISCRETION BY NOT FOLLOWING THE SENTENCING PROCEDURE AS SET FORTH BY STATUTE AND CASE LAW.

Appellant's Brief at 3.

¶ 12 Appellant first contends that he was unfairly prejudiced by the admission of evidence concerning a past criminal charge which was not before the jury. Specifically, Appellant claims that it was error for the Trial Judge to permit the prosecutor to question a police officer concerning a criminal charge stemming from an incident that occurred in August of 1997.

¶ 13 The admissibility of evidence is a matter addressed to the discretion of the trial court and may be reversed on appeal only upon a showing that the court abused its discretion. *Commonwealth v. Richter*, 551 Pa. 507, 512, 711 A.2d 464, 466 (1998). Evidence of prior bad acts is generally not admissible if offered merely to show bad character or a propensity for committing bad acts. *Id.* Exceptions to this general proscription exist in special circumstances where the evidence is relevant for some other legitimate purpose and not merely designed generally to prejudice the defendant by showing him to be a person of bad character. *Id.* If such evidence is admitted, the trial court must instruct the jury as to the limited purpose for which they may consider the evidence of a defendant's prior bad acts. *Id.*

¶ 14 In the present case, Patrolman Dominick Andidora of the Carbondale Police Department testified that he had been acquainted with Appellant for several years. N.T. Trial, 7/15/98, at 12. He also stated that he was "somewhat" familiar with victim Kelly Kraycar. *Id.* Patrolman Andidora testified that both Keith and Kelly Kraycar came to the Carbondale police station on August 22, 1997. At that time, the Kraycars reported Appellant for reckless driving because he tried to hit them with his vehicle. *Id.* at 13. The following exchange then occurred:

Q. [By the prosecutor]: And, sir, based on what they told you, did you file any charges?

A. [By Patrolman Andidora]: Yes.

Q. And who did you file the charges against, sir?

A. Scott Davis.

Q. And what was the ultimate result of those charges, sir?

[By Defense Counsel]: Objection.

THE COURT: Hold on, Officer.

[By the prosecutor]: I'll withdraw the question. Nothing further.

*Id.* at 13.

¶ 15 As an initial point in our analysis, we note that the conduct in question, *i.e.*, Appellant's alleged reckless driving on August 22, 1997, was relevant to the charge before the jury. The events of August 22nd formed part of the basis of the criminal complaint filed in the instant case alleging that Appellant was guilty of stalking the victims. *See* Criminal Complaint filed 12/23/97 at 2–3. Furthermore, Pennsylvania law is clear that evidence which establishes a pattern of actions over a period of time is admissible to show a "course of conduct" sufficient to sustain a charge of stalking. 18 Pa.C.S.A. § 2709(f). Acts indicating a "course of conduct" are admissible even when they occur in more than one jurisdiction. *Id.* § 2709(e.1). Moreover, acts which occur in one jurisdiction may be used by any other jurisdiction to demonstrate a "continuing pattern of conduct" or "course of conduct." *Id.* Thus, the testimony concerning Appellant's conduct on that date was clearly admissible and cannot be deemed to stem from a "prior bad act." *See also Common-*

wealth v. Barzyk, 692 A.2d 211, 217 (Pa.Super.1997) (evidence of prior bad acts is admissible where it tends to establish intent or course of conduct); *Commonwealth v. Urrutia*, 439 Pa.Super. 227, 653 A.2d 706, 709 (1995), *appeal denied*, 541 Pa. 625, 661 A.2d 873 (1995) (evidence of prior bad acts may be admitted properly to establish a defendant's intent to stalk the victim, or to show that the defendant intended to cause emotional distress to the victim). The only question before this Court is whether Patrolman Andidora's statement that he filed separate charges predicated on the incident of August 22nd can be deemed reversible error.

¶ 16 The Trial Court provided an extensive jury instruction concerning the separate charges stemming from the events of August 22, 1997:

> The charge on Scott Street was independent of this case. I'm not permitted [to tell you] and you will not know what that charge was. But you are not to be overlooking the events. While you are directed to overlook the charge, whether or not a charge was filed should not be a concern to you.
>
> You have yourselves heard the testimony in connection with the Scott Street incident. It is up to you to determine whether or not the events on Scott Street happened and how they happened. And in [the] event you should find that they happened, then to determine whether or not they fall into the course of conduct which it [sic] was intended to cause emotional distress or not.
>
> So forget whether or not a charge is brought and what happened, what happened to that charge [sic]. You are required to view the incident as one of the incidents that's been described in the testimony and decide whether or not that constituted part of the course of conduct that constitutes stalking. Okay.

Everybody understand that[?] All right.

N.T. Trial, 7/15/98, at 108–109.

■ ¶ 17 The jury charge given in this case properly informed the jury that they were to consider only whether the events of August 22, 1997 actually occurred, and, if so, whether they constituted part of a course of conduct sufficient to sustain a conviction on the charge of stalking.[5] The Trial Court explicitly and firmly instructed the jury that it could not consider whether a separate criminal charge was ever filed predicted upon this incident. Moreover Judge Hogan clearly informed the jury that it was not permitted to speculate on the outcome of any such separate charge.

■ ¶ 18 Absent evidence to the contrary, Pennsylvania law presumes that a jury will follow the instructions of the Trial Judge. *Commonwealth v. O'Hannon*, 557 Pa. 256, ——, 732 A.2d 1193, 1196 (1999); *Commonwealth v. LaCava*, 542 Pa. 160, 182, 666 A.2d 221, 231 (1995). An appellate court will not attribute error when the Trial Judge provides an instruction that fully explains the purpose for which the jury may consider specific evidence. *Richter*, 551 Pa. at 513–514, 711 A.2d at 467. We find that the limiting instruction Judge Hogan gave in this case was adequate under *Richter, supra.* We note, moreover, that the challenged testimony comprises at most two sentences out of a trial which lasted for two days and resulted in approximately two hundred eighty (280) pages of transcripts. Furthermore, the Commonwealth is correct in its averment that defense counsel made no objection at trial to the limiting instruction in question. *See* N.T. Trial, 7/15/98, at 108–110. In light of all these circumstances, we conclude that Appellant is not entitled to relief on this claim.

■ ¶ 19 Appellant next contends that the Trial Court committed an abuse of

---

5. As previously noted, the testimony provided by Mr. and Mrs. Kraycar concerning these events and their significance differed greatly from the testimony of Appellant's paramour, Ms. Harhut.

discretion when imposing sentence in this case. Appellant does not argue that the sentence imposed was illegal or that it exceeded the statutory maximum possible for the crime of stalking. Rather, Appellant complains that the sentence was unreasonable in this particular case, and that Judge Hogan failed to provide a sufficient explanation of record to justify imposing sentence outside the ranges of the Sentencing Guidelines. It is well-settled that this type of claim goes to the discretionary aspects of sentence. *Commonwealth v. Thomas*, 370 Pa.Super. 544, 537 A.2d 9, 12 (1988).

¶ 20 Appellant's brief contains the requisite statement of reasons relied upon in support of appeal as required by 42 Pa.C.S.A. § 9781(b), Rule of Appellate Procedure 2119(f), and *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). A claim that the sentencing court imposed an unreasonable sentence by sentencing outside the guideline ranges raises a "substantial question" which is reviewable on appeal. *Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa.Super.1999) (*en banc*). We thus will consider the merits of Appellant's contentions.

¶ 21 The standard under which we review sentencing claims is well established. "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Id.*, at 213 (quoting *Commonwealth v. Burkholder*, 719 A.2d 346, 350 (Pa.Super.1998)). As this Court recently explained in *Commonwealth v. Gibson*, 716 A.2d 1275 (Pa.Super.1998):

The following standards are applicable in evaluating the merits of [an allegation that the Trial Court committed an abuse of discretion in sentencing outside the guideline ranges]:

In sentencing outside the guidelines, the sentencing judge must follow the mandate of § 9721(b) of the Sentencing

Code, 42 Pa.Cons.Stat.Ann. § 9701 et seq., which provides in pertinent part: In every case where the court imposes a sentence outside the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing ... the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence and re-sentencing the defendant....

The statute requires a trial judge who intends to sentence a defendant outside the guidelines to demonstrate on the record, as a proper starting point, his awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as he also states of record "the factual basis and specific reasons which compelled him to deviate from the guideline range."

*Id.*, 716 A.2d at 1276–1277 (quoting *Commonwealth v. Johnson*, 446 Pa.Super. 192, 666 A.2d 690, 693 (1995)).

¶ 22 When evaluating a claim of this type, it is necessary to remember that the sentencing guidelines are advisory only. *Gibson*, 716 A.2d at 1277. If the sentencing court deems it appropriate to sentence outside the guidelines, it may do so as long as it offers its reasons. *Id.* "[O]ur Supreme Court has indicated that if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is *not un*reasonable, we must affirm a sentence that falls outside those guidelines...." *Id.* (citing *Commonwealth v. Smith*, 543 Pa. 566, 673 A.2d 893 (1996) (emphasis in original)). As we very recently stated in *Commonwealth v. Guth*, in exercising its discretion, the trial court **must** consider the character of the defen-

dant and the particular circumstances of the offense, and **must** impose a sentence that is consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. *Commonwealth v. Guth*, 735 A.2d 709, 711 (Pa.Super.1999).

¶ 23 In the present case, we find that Judge Hogan made a sufficient and adequately informed contemporaneous statement when he imposed Appellant's sentence. First, the Sentencing Court was fully informed by a pre-sentence report which Judge Hogan discussed on the record. N.T. Sentencing Hearing, 9/18/98, at 2.[6] Second, in addition to the testimony adduced at trial, the Sentencing Court heard testimony from the victims in the case as well as Lawrence Copeland, the guardian ad litem appointed for Appellant's children by the Court of Common Pleas of Lackawanna County. *Id.* at 3–4, 4–6, 15–16. Judge Hogan also provided Appellant with an opportunity to speak before sentence was imposed. *Id.* at 11–14, 18.

¶ 24 Judge Hogan reviewed the testimony adduced at trial, as well as the victim's testimony at the sentencing hearing, and concluded that Appellant engaged in a pattern of deceit and manipulation to avoid any official sanctions for the terror he brought to Mr. and Mrs. Kraycar. *Id.* at 18. The sentencing court acknowledged that Appellant's behavior while under the pre-trial monitoring program was satisfactory. *Id.* at 17–18. However, Judge Hogan concluded that Appellant's model behavior was motivated by his impending trial, and that he had evidenced no intention of abandoning his campaign of terror against the Kraycars unless he continued

to be closely supervised. *Id.* at 18–19. *See* Pre–Sentence Report at 2 (even after jury found him guilty, defendant denies that he had any intent to stalk or harass the victims). *See also Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12 (1988) (where a pre-sentence report exists, and it is clear the sentencing court reviewed it, we presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors).[7]

¶ 25 In light of all these facts, Judge Hogan concluded that it was necessary to deviate from the guidelines because a more lenient sentence would not be consistent with Appellant's lack of remorse and the specific circumstances surrounding Appellant's history with the Kraycars. N.T. Sentencing Hearing, 9/18/98, at 18–19. The sentencing judge also considered the need to protect Appellant's children, as he was entitled and required to do. *Id.* at 16. We are cognizant of the fact that, strictly speaking, Appellant's children are not "victims" in the present case in that the complaint filed in the matter did not list them as such. Nevertheless, a sentencing judge is required to vindicate the safety of the general public, as well as the safety of the named victims, when crafting a sentence. *Guth*, 735 A.2d at 711. We see no abuse of discretion in the Trial Court's decision to consider the impact of Appellant's behavior on his children.

¶ 26 For all the foregoing reasons, we affirm the judgment of sentence.

6. We note that the pre-sentence report contains a properly completed copy of the Pennsylvania Sentencing Guideline Form, and that Judge Hogan stated explicitly that he had reviewed it. N.T. Sentencing Hearing, 9/18/98, at 2. Appellant does not contend that the Guideline Form was completed incorrectly. We conclude that Judge Hogan satisfied the requirement that a sentencing court must demonstrate its awareness of the guideline ranges. *See Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa.Super.1999) (*en banc*).

7. We stress the fact that Appellant testified during the sentencing hearing, thus providing Judge Hogan with a first hand opportunity to observe thoroughly Appellant's attitude.