J-S04009-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM HAYES | : | |
| | : | |
| Appellant | : | No. 1899 EDA 2021 |

Appeal from the Judgment of Sentence Entered June 10, 2020
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0003647-2019

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED MARCH 11, 2022**

Appellant, William Hayes, appeals *nunc pro tunc* from the judgment of sentence of 5½ to 15 years' incarceration, imposed after he entered an open guilty plea to burglary (18 Pa.C.S. § 3502(a)(1)(ii)), criminal trespass (18 Pa.C.S. § 3503(a)(1)(ii)), theft by unlawful taking (18 Pa.C.S. § 3921(a)), receiving stolen property (18 Pa.C.S. § 3925(a)), access device fraud (18 Pa.C.S. § 4106(a)(1)(ii)), and criminal mischief (18 Pa.C.S. § 3304(a)(5)). On appeal, Appellant seeks to challenge the discretionary aspects of his sentence.   Additionally, Appellant's counsel, Stuart Wilder, Esq., seeks to withdraw his representation of Appellant pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa.

---

[*] Former Justice specially assigned to the Superior Court.

2009).  After careful review, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

The trial court provided the following summary of the facts of Appellant's underlying convictions:

> [The] affiant ... is Detective Neil Tropiano of Bensalem Township Police Department….  On May 15, 2019, Bensalem police responded to 3535 Third Avenue in Bensalem Township, Bucks County, for a burglary.  The responding officers met with the homeowner, [Kathleen] Hayes.  Ms. Hayes stated that an unknown subject had entered her residence through a rear second-floor bedroom window.
>
> The [o]fficer entered the bedroom and observed the sliding window to be open and [the] curtains to be off [of] the track.  There were also clothes on the floor and Ms. Hayes stated that they had not been there the night before.  She stated that she went to bed between 10:30 and 11:00[]p.m. on May 14, 2019.  She stated that around 2:30 in the morning[,] a dog barking woke her up and she heard the neighbor's dog barking as well.  She stated that she did not hear anything in the residence[,] and she went back to sleep.  She advised that she found items to be missing[,] … the window was open when she woke up in the morning[,] and the screen was broken.
>
> A ladder was observed in the rear of the residence leaning up against the house.  [Ms. Hayes] stated that the ladder should not have been there[,] and it appeared to have been used by the actor to gain access onto the roof on the first floor and to get into the house through the second[-]floor window.  The ladder [had been] removed from underneath the rear deck of the residence where it was kept[,] and a latched gate had to be opened to remove that ladder; it was not in plain sight….
>
> Ms. Hayes stated that the person who entered her residence went into the kitchen and went through her purse.  The [suspect] stole her keys, and keys to her father's, Joseph Sawicki[], 2014 Toyota RAV-4.  She advised that her HP laptop, charger, and her business LG cell phone were also stolen from a table in the living room of the residence.  Those were items that were used to run the family-owned business.

The [suspect] also stole her father's 2014 blue Toyota R[AV]-4. Her father's wallet and his LG cell phone were also inside the vehicle when it was stolen. As the [suspect] left the residence, [the suspect] broke the front porch gate and placed it on the side of the fence area.

Upon further investigation, there were numerous charges on Joseph Sawicki's credit card, including a charge on May 15, 2019[,] at 11:09 in the morning at a Burger [K]ing in Philadelphia, as well as on May 15, 2019[,] at a Quickie Mart in Philadelphia.

Ms. Hayes stated that she received a fraud alert from her credit card company and found that her credit card had been used at … two different Wawa locations. The first was on May 15th at approximately 2:56 in the morning at a Wawa location in Trevose, which is very close to the victimized residence. And again, on May 15, 2019, in Philadelphia, there were three attempted transactions at 3:57 in the morning. Those transactions were not completed, but they were for a substantial amount of money. The total value of the completed and attempted transactions was over $500.

The video surveillance at a Wawa location where the suspect used the stolen credit card was reviewed by [Detective Tropiano]. The video showing a male subject buying a pack of cigarettes using Ms. Hayes's credit card at 2:56. The Wawa is 3.3 miles from the burglary scene.

[Detective Tropiano] obtained still photographs from that video and sent [them] to Ms. Hayes. Ms. Hayes reported to [Detective Tropiano] that the male subject using the credit card was her ex-[husband], … who is … [Appellant]. Ms. Hayes also said that the keys on the counter in the surveillance Wawa pictures were her keys.

[Detective Tropiano] reviewed the video surveillance of the rear parking lot of the Wawa. This surveillance video showed [that] Appellant[,] prior to using the credit card[,] was driving the 2014 Toyota RAV-4 [that] had been stolen from Mr. Sawicki and from the residence. Appellant [was] observed walking in the area of the vehicle and into the rear entrance of the Wawa location. Ms. Hayes advised that … [Appellant] had lived at the home [prior] to the burglary, and would have known that the ladder was kept under the deck in the rear yard behind the gate.

Trial Court Opinion (TCO), 9/29/21, at 2-3 (quoting N.T., 6/10/20, at 5-10) (brackets added by the trial court omitted).

Based on these facts, Appellant was charged with the above-stated crimes. He pled guilty on March 3, 2020. On June 10, 2020, the court conducted a sentencing hearing, at the conclusion of which it imposed the aggregate sentence set forth *supra*. Appellant filed a timely, post-sentence motion. On August 17, 2020, the court conducted a hearing on that motion, and then denied it.

Appellant filed a timely notice of appeal, but it was discontinued on October 23, 2020. Appellant then filed a petition under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, seeking the reinstatement of his appellate rights. The court ultimately granted Appellant's petition and reinstated his appeal rights on May 21, 2021. Appellant filed the present, *nunc pro tunc* appeal on June 6, 2021. The court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, informing him that "[a]ny issue not properly included in the statement timely filed and served shall be deemed waived." Order, 6/3/21, at 1. On June 14, 2021, Attorney Wilder filed a Rule 1925(b) statement on Appellant's behalf, preserving the following, single issue: "The [c]ourt erred in denying [Appellant's] motion to reconsider sentence, and to leave undisturbed a [5½] year sentence[,] imposed in excess of that recommended for the aggravated range, after hearing [Appellant's] explanation for his post-guilty plea actions

- 4 -

in contacting a victim." Pa.R.A.P. 1925(b) Statement, 6/14/21, at 1. The trial court thereafter filed its Rule 1925(a) opinion.

On November 12, 2021, Attorney Wilder filed with this Court a petition to withdraw from representing Appellant. That same day, counsel also filed an **Anders** brief, discussing the following two issues that Appellant seeks to raise on appeal:

> A. Should Appellant's counsel be permitted to withdraw his appearance because the appeal is wholly frivolous?
>
> B. Did the [s]entencing [c]ourt err in imposing a sentence in excess of that recommended by the Sentencing Guidelines and failing to adequately explain how or if it used the guidelines to fashion its sentence?

**Anders** Brief at 4.

Attorney Wilder concludes that Appellant's sentencing issue is frivolous, and that Appellant has no other, non-frivolous issues he could pursue herein. Accordingly,

> this Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the appellant]. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).
>
> Prior to withdrawing as counsel on a direct appeal under **Anders**, counsel must file a brief that meets the requirements established by our Supreme Court in **Santiago**. The brief must:
>
> > (1) provide a summary of the procedural history and facts, with citations to the record;
> >
> > (2) refer to anything in the record that counsel believes arguably supports the appeal;
> >
> > (3) set forth counsel's conclusion that the appeal is frivolous; and

> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.
>
> ***Santiago,*** 978 A.2d at 361. Counsel also must provide a copy of the ***Anders*** brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the ***Anders*** brief." ***Commonwealth v. Nischan,*** 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, … 936 A.2d 40 ([Pa.] 2007).

***Commonwealth v. Orellana***, 86 A.3d 877, 879-80 (Pa. Super. 2014). After determining that counsel has satisfied these technical requirements of ***Anders*** and ***Santiago***, this Court must then "conduct a simple review of the record to ascertain if there appear[s] on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*).

In this case, Attorney Wilder's ***Anders*** brief complies with the above-stated requirements. Namely, he includes a summary of the relevant factual and procedural history, he refers to portions of the record that could arguably support Appellant's claims, and he sets forth his conclusion that Appellant's appeal is frivolous. Counsel also explains his reasons for reaching that determination and supports his rationale with citations to the record and pertinent legal authority. Additionally, Attorney Wilder states, in a letter attached to his petition that is directed to Appellant, that he is enclosing his ***Anders*** brief for Appellant's review. Counsel's letter also informs Appellant of the rights enumerated in ***Nischan***. Accordingly, Attorney Wilder has

complied with the technical requirements for withdrawal. We will now independently review the record to determine if Appellant's issue is frivolous, and to ascertain if there are any other, non-frivolous issues he could pursue on appeal.

Attorney Wilder states in his **Anders** brief that Appellant wishes to challenge his sentence on the basis that "[t]he … court erred in imposing a sentence in excess of that in the aggravated range of the sentencing guidelines[.]" **Anders** Brief at 17. Specifically, Appellant claims that the court gave

> inadequate consideration to … Appellant's remorse for his criminal acts and the drug addiction that gave rise to his anti-social behavior, as well as his failed attempts to obtain help for his addiction, and the motivation, provided in the form of a newborn son, to finally get serious about getting off drugs. The statement of reasons at the time of sentence, N[.]T[.,] … [at] 54-63, do[es] not explicitly mention that the sentence is a departure from that recommended by the [s]entencing [g]uidelines. For the lower court to give such short shrift flies in the face of the requirement set forth in 42 Pa.C.S. § 9721(b) that the sentencing court take into account the rehabilitative needs of the defendant. No meaningful consideration was given to that factor by the [c]ourt. Absent such consideration a sentence outside of the ranges suggested by the [s]entencing [g]uidelines was unreasonable.

**Id.** at 18.

Initially, we note that Appellant's claims that the court failed to consider mitigating factors in this case, the sentencing guidelines, or Appellant's rehabilitative needs were not specifically raised in Appellant's Rule 1925(b) statement. Thus, those arguments are waived. **See** Pa.R.A.P. 1925(b)(4)(vii)

("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

In any event, we would agree with Attorney Wilder that, although Appellant's sentencing arguments present substantial questions for our review,[1] they are frivolous on their merits. Initially, we reproduce the trial court's summary of the evidence presented at Appellant's sentencing hearing:

> [A]t the sentencing hearing, both victims testified. Joseph Sawicki, Appellant's former father-in-law and one of his victims (hereinafter "Mr. Sawicki"), testified that Appellant worked at his family business for 15 years and lived with him when he was married to his daughter, Ms. Hayes. [N.T.] at [] 14. After Appellant and Ms. Hayes's divorce and prior to the burglary, Mr. Sawicki saw Appellant wandering around the neighborhood on a cold winter's morning and discovered Appellant was homeless. *Id.* at []15. Mr. Sawicki invited Appellant into his home, gave him something to eat and drink, and allowed Appellant to stay there for several weeks. *Id.* … Appellant even testified that Mr. Sawicki

---

[1] *See Anders* Brief at 15-16 (explaining why Appellant's arguments constitute substantial questions for our review); *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (explaining that, where an appellant challenges the discretionary aspects of his sentence, he must, *inter alia*, demonstrate that "there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b)") (citation omitted). *See also Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) ("[A]n excessive sentence claim, in conjunction with a claim that the trial court failed to properly consider mitigating factors, raises a substantial question.") (citation omitted); *Commonwealth v. Davis*, 737 A.2d 792, 798 (Pa. Super. 1999) ("A claim that the sentencing court imposed an unreasonable sentence by sentencing outside the guideline ranges raises a 'substantial question' which is reviewable on appeal.") (citation omitted); *Commonwealth v. Jackson*, 585 A.2d 533, 534 (Pa. Super. 1991) ("Where [an] appellant avers that the sentencing court failed to properly apply the sentencing guidelines a substantial question as to the appropriateness of the sentence has been raised.") (citation omitted).

was like a father to him and treated him with kindness. *Id.* at [] 31.

Ms. Hayes testified that the burglary has had a continued, significant impact on her life and the lives of those who live at the burglarized residence. She also stated that they live in fear[,] so much so that they have installed interior and exterior security cameras and have secured all of the second-floor windows so that they can no longer open and likened it to living in a cage[.] *Id.* at [] 17. She further revealed that the vehicle Appellant stole was her father's first brand-new car, and he never received the car back because Appellant totaled it. *Id.* at [] 18. Perhaps even more importantly, Ms. Hayes testified that the stolen computer and phone were for their family business and contained client information and schedules. Without that information, they were unable to remember appointments and were fired by so many clients they were unsure if they could continue to keep the business at all. *Id.* at [] 18-19. Because Appellant worked for the family business for fifteen years, he knew the importance of the information on these devices before he stole them. *Id.* at [] 19.

Moreover, at the sentencing hearing, this [c]ourt learned that Appellant previously victimized Ms. Hayes in 2008 when he was convicted of Terroristic Threats and Stalking after threatening to break into her home, bash her head into a wall, and steal her vehicle. *Id.* at [] 20. Additionally, despite a condition of bail that Appellant have no contact with Ms. Hayes, this [c]ourt learned that Appellant sent approximately three letters to Ms. Hayes before he was sentenced. *Id.* at [] 26. The first two letters were sent before Appellant pled guilty and they asked Ms. Hayes not to come to court and not to cooperate with police so that charges would be withdrawn. *Id.* at [] 24. The third letter was sent after Appellant pled guilty and again asked Ms. Hayes to withdraw the charges. *Id.* ….

TCO at 3-4.

In addition to considering the victims' and Appellant's testimony in fashioning Appellant's sentence, the trial court stated that it also "considered all of the factors set forth in the Sentencing Code, including the protection of the public, the gravity of the offense, the history, character, condition[,] and

rehabilitative needs of [Appellant] and the sentencing guidelines…." *Id.* at 8; *see also* N.T. at 54 (court's stating it considered "the facts of the case, [Appellant's] background, the nature and character of [Appellant], which includes [his] background and criminal history, [the] sentencing guidelines, any impact the crimes have had upon the victim and the community, and, of course, the need to protect others, and [Appellant's] need for rehabilitation"). Based on these factors, the court "concluded that a substantial term of incarceration was required." TCO at 8. The court offered a lengthy explanation of the reasons for its sentence at the hearing, *see* N.T. at 54-61, and it further summarized the basis for Appellant's sentence in its Rule 1925(a) opinion, as follows:

> [The s]entencing guidelines for Appellant's [b]urglary conviction included [a minimum sentence of] 60 months['] (five years[']) [incarceration] in the aggravated range. This [c]ourt gave a sentence that exceeded the aggravated range for a variety of reasons as explained below.
>
> First, Appellant burglarized a home in the middle of the night and stole items that he knew had both financial value and sentimental meaning. N.T. … [at] 54. The items Appellant stole almost resulted in the loss of the entire family business, and as such, the impact this burglary has had on the victims is immeasurable.
>
> Second, Appellant has a long history of domestic violence convictions—some of which are against the same victim as this case, Ms. Hayes. [*Id.* at] 56. Appellant's criminal history is not only lengthy, but it is also escalating, even after Appellant has spent time in the State Correctional Facility. *Id.* …. In fact, Appellant was released from jail for no more than 12 hours before he committed this crime. *Id.* …. At his preliminary arraignment, Appellant was advised that he could not have contact with Ms. Hayes. *Id.* Despite this, Appellant proceeded to write to her several times. *Id.* …. Even after his bail was revoked due to this contact, Appellant continued to write to Ms. Hayes. *Id.* …. These

- 10 -

letters demonstrated to this [c]ourt not only Appellant's intent to manipulate Ms. Hayes, but also his complete disregard for the entire criminal justice system. ***Id.*** at [] 57. Furthermore, this [c]ourt found Appellant's own actions demonstrated the imperative need to protect the community and the significant need for rehabilitation. ***Id.*** at [] 59.

Appellant testified that he wrote to Ms. Hayes because he "thought they would take a little mercy on [him]" and they would "cut [him] a break." ***Id.*** at [] 31. These statements reveal Appellant's selfishness and lack of understanding of the gravity of his actions. Additionally, Appellant also testified that he had never harmed Ms. Hayes in the 26 years he has known her[, ***id.***,] … [y]et, Appellant was convicted of several offenses where Ms. Hayes was the victim. Therefore, this [c]ourt believed Appellant's apology to be disingenuous and just another attempt to manipulate the criminal justice system by convincing this [c]ourt to impose a lesser sentence. ***Id.*** at [] 61.

At the hearing for his Motion to Reconsider Sentence, [Appellant] again issued an insincere apology, where he testified that the letters were a bad mistake and would not happen again. N.T.[,] 8/17/[]20, [at] 5. Yet, the fact that he sent the letters after being repeatedly told by different [j]udges that he was to have no contact expressly demonstrates Appellant's actions differ substantially from his words. This [c]ourt found that Appellant's testimony amounted to nothing more than Appellant['s] stating he was dissatisfied with his sentence. ***Id.*** at [] 16. Therefore, this [c]ourt found Appellant's sentence appropriate and necessary, and denied the Motion to Reconsider Sentence.

TCO at 8-10.

This record demonstrates that in fashioning Appellant's sentence, the court adequately considered the sentencing guidelines, Appellant's rehabilitative needs, his statements of remorse at the sentencing and post-sentence motion hearings, and all other required factors. The court also provided a thorough explanation for its sentencing decision, which was supported by the facts and evidence presented to the court. Consequently,

we would conclude that Appellant's sentence is not unreasonable or an abuse of the trial court's discretion. As we discern no other, non-frivolous claims that Appellant could present herein, we grant Attorney Wilder's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judge Murray joins this memorandum.

President Judge Emeritus Stevens files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2022