**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Kevin GIBSON a/k/a Peter**
**Gibson, Appellant.**

Superior Court of Pennsylvania.

Argued June 16, 1998.

Filed Aug. 3, 1998.

Kathleen A. Kane, Philadelphia, for appellant.

Michael R. Acker, Asst. District Attorney, Philadelphia, for Com., appellee.

Before CAVANAUGH, STEVENS and HESTER, JJ.

HESTER, Judge:

Kevin Gibson a/k/a Peter Gibson appeals the discretionary aspects of the ten-to-twenty year sentence imposed by the Honorable Ricardo C. Jackson following appellant's entry of a guilty plea to possession of a controlled substance with intent to deliver and conspiracy. We affirm.

On April 13, 1996, at approximately 6:00 p.m., Philadelphia Police Officer Kenneth Flemming was conducting a surveillance of the 200 block of East Shedaker Street, Philadelphia. Officer Flemming observed several men separately approach another man wearing a green coat. The men would hand the man in the green coat money, and he would direct them to appellant, who was standing nearby with a paper bag in his hand. Appellant then would hand the men a small object from the paper bag. Between purchases, appellant closed the bag and placed it in a vacant lot.

After these purchases were completed, appellant started toward a nearby bar, leaving his paper bag in the vacant lot. He was arrested inside the bar, but his accomplice in the green coat escaped. The paper bag contained 1.59 grams of crack cocaine in fifty red-tinted plastic baggies.

On February 13, 1997, appellant tendered an open guilty plea to possession of a controlled substance with intent to deliver and conspiracy. He was informed of the sentencing maximums applicable to those crimes. This appeal followed imposition of the above-described sentence. Appellant challenges the discretionary aspects of the sentence imposed.

As required by Pa.R.A.P. 2119(f) and the dictates of *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987), appellant has included in his brief a separate statement of reasons relied upon for this appeal. We proceed to consider whether that statement indicates that a substantial question is presented as to the appropriateness of appellant's sentence. In that statement, appellant states, "In accordance with 42 Pa.C.S. § 9781(c)(3), this court has jurisdiction to hear this appeal because the sentencing court sentenced outside the applicable sentencing guidelines and the sentence is unreasonable." Appellant's brief at 5.

We repeatedly have stated, in accordance with the statutory language of 42 Pa.C.S. § 9781(c)(3), that an appeal from the discretionary aspects of a sentence *will* be allowed where a defendant alleges that his sentence is outside the guidelines and unreasonable. *See Commonwealth v. Johnson,* 446 Pa.Super. 192, 666 A.2d 690 (1995). Hence, contrary to the Commonwealth's assertion, appellant has raised, in his Pa.R.A.P. 2119(f) statement, a substantial question as to the appropriateness of his sentence, and we consider the merits of this appeal.[1]

The following standards are applicable in evaluating the merits of appellant's issue:

In sentencing outside the guidelines, the sentencing judge must follow the mandate of § 9721(b) of the Sentencing Code, 42 Pa.Cons.Stat.Ann. § 9701 et seq., which provides in pertinent part:

---

1. The Commonwealth also asserts that appellant waived the issue since he entered a guilty plea. The law is to the contrary. The defendant retains the right to appeal the discretionary aspects of the sentence imposed pursuant to an open guilty plea. *Commonwealth v. Dalberto,* 436 Pa.Super. 391, 648 A.2d 16 (1994). The defendant waives the right to appeal the discretionary aspects of his sentence only if he enters a guilty plea with a negotiated sentence. *Id.* Hence, appellant has *not* waived the issue presented herein.

In every case where the court imposes a sentence outside the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing ... the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence and re-sentencing the defendant.

. . . .

The statute requires a trial judge who intends to sentence a defendant outside the guidelines to demonstrate on the record, as a proper starting point, his awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as he also states of record "the factual basis and specific reasons which compelled him to deviate from the guideline range."

*Commonwealth v. Johnson, supra,* 666 A.2d at 693.

We also must keep in mind that the sentencing guidelines are advisory, and if the sentencing court deems it appropriate to sentence outside them, it may do so as long as it offers its reasons. *Id.* Further, our Supreme Court has indicated that if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is *not un*reasonable, we must affirm a sentence that falls outside those guidelines due to the language of 42 Pa.C.S. § 9781(c)(3). *Commonwealth v. Smith,* 543 Pa. 566, 673 A.2d 893 (1996).

In the present case, contrary to appellant's initial contention, the sentencing court did set forth the relevant guidelines ranges, and appellant agreed with its assessment of the ranges:

THE COURT: Now I note, Mr. Stewart, that this is an ungraded felony. Offense gravity score of six, prior record score of three.

MR. STEWART [DEFENSE COUNSEL]: Yes, sir.

THE COURT: In the mitigated is 9 to 12, standard is 12 to 18, aggravated 18 to 21.

MR. STEWART: Yes, sir.

Notes of Testimony ("N.T."), 4/16/97, at 6. These ranges are the same as those that appellant suggests apply. *See* Appellant's brief at 7.

Thus, the court indicated its awareness of the correct guideline ranges. The sentencing court also gave extensive and compelling reasons for its decision to depart from the guidelines:

THE COURT: He is the typical drug dependent person. Started smoking opium, marijuana, age 14. Age 14 through 18. Snorted heroin once at age 30. Abusing Valium from age 16 through 17, twice per week. Age 21 the defendant started snorting cocaine. Age 24 he started smoking the substance.

And at first he did it on payday, as I suggested. He goes out and gets paid on Friday, and he sniffs it all up his nose. He goes back to work Monday to buy—get more drugs.

In arriving at what this Court believes will be an appropriate sentence I've considered the sentencing guidelines as indicated on the record earlier. I've considered the sentencing code, and all other applicable provisions of the sentencing laws.

I've considered 42–97–21, wherein I am to follow the general principals that the sentencing imposed should call for confinement that is consistent with protection of the public. Now, obviously I've got to protect the public from the people who seek to sell them illicit drugs, and that can only be done by confinement.

The gravity of the offense as it relates to the impact of the life of the victim and of the community, and I really do not have to say how it impacts on the Philadelphia community as a whole. We know that Philadelphia is one of the cities that has one of the largest drug problems of any city of its size, and it's because of people like this defendant.

THE DEFENDANT: Well, Your Honor—

THE COURT: They never learn. They never, never, never learn.

THE DEFENDANT: Your Honor, that's the first time I was selling drugs. I was selling drugs for my habit, you know.

THE COURT: I understand that. But that's not an excuse.

And I look at the rehabilitative needs of the defendant. And obviously he's failed at rehabilitation in 1985. I told you in 1985, I said to you that I am going to place you on probation. I am going to give you a chance. You told me the same thing very well. You told me the same thing you told me in 1985. You told me to give me a chance. Give me a chance. Give me a chance.

And despite the District Attorney's wish that I incarcerate you at that time I said no, District Attorney. I'm not gonna put him in jail now. I'm not gonna send him to the penitentiary now. I am gonna give him the opportunity. I'll give him the opportunity to become a productive citizen. To end his criminal career.

And at that time I told you that you had the keys to the jailhouse door, and it's up to you whether or not you wanted to go in or not. Open that door. And you said no, I don't wanna go in that door. Do you remember that?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: When you were sentenced I told you to immediately enroll in G.E.D. studies and job training.

THE DEFENDANT: Yes, you did.

THE COURT: You have not done that. I told you to remain employed full-time, and you have not done that. I told you to report for a periodic urinalysis since 1985. I told you to report for a periodic urinalysis because I wanted to help you remain drug free. I am looking for all reasons not to send you to the penitentiary. And I told you to pay a $500 fine and $100 cost within one year. You failed to do so.

THE DEFENDANT: (indicating)

THE COURT: You just didn't do anything that I told you to do. You did nothing that I ordered you to do. And on top of that, on top of that, not doing what I ordered you to do, you thumbed your nose at me once again by not reporting as I ordered you to do. And we look for you close to ten years. Nine years and eight months we've been looking for you on wanted cards.

In fashioning an appropriate sentence I considered the statements of your brother. And I see that your brother is a strong person, and he understood where drugs led. You know, he's been drug free for ten, eleven years. You'll have to one day learn that yourself.

THE DEFENDANT: (indicating)

THE COURT: I've considered the presentence report, where I am advised that there are eleven arrests, three convictions, one probation and parole, one commitment, and one violation of probation or parole. I've considered the social hereditary history.

I have considered your marital history. And I just wonder what future do those poor children have? Born two separate relationships, four children. Oldest is thirteen, youngest is age three. And instead of providing for those children, as you are required to do by law and by morals, what did you do with the money?

THE DEFENDANT: I was taking care of my kids.

THE COURT: You snorted the money, and you shot the money, or you—whatever you do with the drugs. That's what you did with the money. And as a result you owe $18,000 in back support. And that's the same $18,000 that you got high with. That same $18,000.

I've considered the drug history as indicated earlier in the record. To support the drug habit by becoming involved in drug sales. Drugs cost fifty, sixty dollars a day, by your own reporting.

I've considered the evaluative summary by our presentence investigator, when he advises that the subject—meaning yourself—has a long and extensive record of

non-compliance with the probation department.

And see what has happened, what has happened, you haven't had any pain yet. That's the problem. You haven't had any pain. You don't think that I can have any authority over you to get you to rid yourself of drugs, to get you not to sell drugs, to get you not to go out and rob people.

But you haven't felt pain. You haven't felt any pain or punishment, and that's precisely why he doesn't report. Because it's too easy for you to be on the street. Your biggest problem—and I agree with you—your biggest problem is getting high, as according to the presentence investigator.

With that in mind the only appropriate sentence would be as follows: On bills of information 96–05–0905, count one, five to ten years state correctional institution. That is the possession with intent to deliver the controlled substance. And the criminal conspiracy, that is likewise five to ten years, consecutive in that case, for a total of ten to twenty years. Ten to twenty years.

N.T., 4/16/97, at 15–20.

To summarize, the court sentenced outside the guidelines due to appellant's early and extensive involvement in drugs, his disregard of an earlier opportunity to reform that was offered by the sentencing court, his refusal to heed the advice of his brother who had overcome addiction, the fact that he did not comply with a single one of the sentencing court's previous orders, his irresponsible actions in losing his job due to use of drugs, and his unforgivable decision to spend his money on drugs rather than support his children. As none of these statements are factually inaccurate and as they indicate that the sentencing court's decision was not unreasonable, we are compelled to affirm its decision to depart from the guidelines. *Commonwealth v. Smith, supra.*

While appellant suggests that he is in need of rehabilitation rather than prison, we note that he had an opportunity to rehabilitate himself in 1985 and failed to avail himself of that opportunity, despite the example and urging of his brother. Appellant also asserts that the court failed to consider his family history, character, and work history. This assertion, as the above quote establishes, is incorrect. Furthermore, appellant has been an unrepentant drug abuser for twenty years, he failed to support his children, and he lost a good job due to drug abuse. These factors hardly militate in his favor.

Judgment of sentence affirmed.