J-A25016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDWIN OTERO | |
| Appellant | No. 2295 EDA 2013 |

Appeal from the Judgment of Sentence of March 28, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0808951-2005

BEFORE: DONOHUE, J., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY WECHT, J.: **FILED NOVEMBER 14, 2014**

Edwin Otero appeals from the judgment of sentence entered March 28, 2013, following his waiver trial and conviction of aggravated assault, simple assault, recklessly endangering another person, accidents involving injury while not properly licensed, and accidents involving damage to property.[1] We affirm.

The trial court set forth the following recitation of facts:

> At a bifurcated waiver trial . . . , the Commonwealth presented the testimony of Ms. Donna Floody, Mr. John Foley, and Ms. Lisa Foley. [Otero] presented testimony from [himself] and Mr. Kareem Shabazz[, an investigator for the defense]. Additionally, two retired Philadelphia Police Officers were unable to be located

---

Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a), 2701(a), 2705; 75 Pa.C.S.A. §§ 3742.1(a), and 3743(a), respectively.

for trial. Therefore, the notes of testimony from two preliminary hearings were introduced in lieu of testimony from Officer Henry Gehring and Officer Robert Byrne.

On September 11, 2004, at approximately 2:45 a.m., Ms. Lisa Foley was in the area of Frankford Avenue and Glenwood Avenue in the city and county of Philadelphia. Ms. Foley arrived at the area in a car with her cousins, Donna Floody and Helena Floody, as well as her brother, John Foley. The group was coming from Ms. Foley's mother's birthday party and were going to an after-hours club on Frankford Ave. Ms. Foley exited the rear of the driver's side of the vehicle and proceeded to cross Frankford Ave. in the middle of the block. Once Ms. Foley had reached the bicycle lane on the opposite side of the street, a white vehicle with tinted windows came down Frankford Ave. at a very high rate of speed and struck Ms. Foley. Witnesses testified that the vehicle had run a red light at the intersection of Frankford and Glenwood, was going approximately sixty miles per hour, did not honk or [brake] prior to striking Ms. Foley, and hit several parked cars on Frankford Ave. John Foley chased after the vehicle, but the driver did not stop. At the time of the incident, it was dark, but there was no traffic on the street[;] it was a clear night, and the street was dry.

Ms. Foley was thrown approximately twenty feet after being struck by the vehicle and suffered several serious injuries, which were stipulated to by both parties. Ms. Foley does not remember the actual impact. Following the incident, she was taken to Hahnemann Hospital, where part of her skull was removed and several rods were inserted into her leg. After two weeks in the hospital, Ms. Foley was transported to Moss Rehab, where she remained for four weeks, followed by lengthy outpatient physical therapy. Ms. Foley's injuries are mostly healed, but she still suffers pains in her leg and headaches. Ms. Foley testified to having several drinks throughout the evening and admitted that she was drunk at the time of the incident.

Officer Henry Gehring responded to the scene of the incident at 3:15 a.m. on September 11, 2004. Officer Gehring found and photographed several car parts at the scene, including[:] pieces of a headlight, a plastic rain deflector, and a chrome windshield wiper arm. Officer Gehring also observed white paint that had transferred onto a parked car at the scene. On September 30, 2004, Officer Robert Byrne of the Philadelphia Police Department's Accident Investigation Division received a tip that

a white Toyota had been involved in a hit and run. Officer Byrne went to 1895 Haworth Street to investigate and was told by [Otero's] mother that her son owned the vehicle. Officer Byrne matched the car parts found at the scene to [Otero's] vehicle. One headlight was visibly dirtier than [the] other, leading Officer Byrne to conclude that one had been replaced. The vehicle's windshield and wiper blade had also been replaced. The rain protectors had been removed, but there was visible glue residue where they had been mounted on the vehicle. The vehicle also had soft contact damage, meaning that there were dents in the vehicle without paint on them, so they had not been caused by metal on metal contact. Officer Byrne had the car towed and returned the next day to speak with [Otero].

[Otero] testified during trial that he had been driving in the area of the incident and did not think that he had hit anyone, but believed that someone had thrown a rock at his vehicle. He testified that there was damage to his windshield and he replaced it the following day. He testified that he had not run a red light at the intersection of Frankford and Glenwood Avenues.

Trial Court Opinion ("T.C.O."), 2/5/2014, at 2-4 (record citations omitted).[2]

On February 4, 2013, the court found Otero guilty of the above-mentioned charges. On March 28, 2013, Otero was sentenced to an aggregate of not less than seven nor more than seventeen years'

---

[2] The passage of time between the incident and Otero's trial is attributable to two interlocutory appeals filed by the Commonwealth pursuant to Pa.R.A.P. 311(d) regarding the admissibility of a statement Otero made to police that his nephew translated, and the officers' notes of that translated admission. *See Commonwealth v. Otero*, No. 130 EDA 2010 (Pa. Super. filed Jul. 2, 2010); *Commonwealth v. Otero*, No. 1296 EDA 2007 (Pa. Super. filed Feb. 2, 2009). Ultimately, although it was determined that the officers could testify as to their memory of Otero's admissions, the officers could not be located and did not testify at trial.

incarceration.[3]  Otero timely filed a post-sentence motion, which was denied

by operation of law on August 5, 2013.  Otero timely filed a notice of appeal,

and pursuant to the trial court's order, filed a statement of matters

complained of on appeal pursuant to Pa.R.A.P. 1925(b) on September 18,

2013.  The trial court entered an opinion pursuant to Pa.R.A.P. 1925(a) on

February 5, 2014.

Otero presents the following three questions for our review:

1.    Did the [trial court] abuse [its] discretion in sentencing Mr. Otero to 7 to 17 years of incarceration plus 2 years['] probation and was this sentence extremely excessive?  Did [the court's] sentence of 5 to 10 years on the Aggravated Assault charge (18 Pa.C.S.A. [§] 2702)(F-2) exceed without reason the guideline range of 27 to 33 months based on offense gravity score of 8 and a prior record score of 5?  Did the sentence of 2 to 7 years consecutive on the charge of Leaving the Scene of a Crime (75 Pa.C.S.A. [§] 3742)(F-3) far exceed the sentencing guidelines of 12 to 18 months for an offense gravity score of 5 and a prior record score of 5?  Did [the court] further abuse [its] discretion by making both sentences consecutive for an extremely excessive sentence of 7 to 17 years of incarceration?  Did [the court] fail to state adequate reasons for the excessive sentence?

2.    Were the verdicts for the crimes of Aggravated Assault (F-2), Simple Assault (M-2), Recklessly Endangering Another Person (M-2) and Leaving the Scene of an Accident (F-3) when someone was injured not supported by sufficient evidence?  Was the evidence conflicting and confusing, and was this case only an

---

[3]    Specifically, the court sentenced Otero to not less than five nor more than ten years for aggravated assault, not less than two nor more than seven years for accidents involving injury while not properly licensed, and two years' probation for recklessly endangering another person, all to run consecutively.  The court did not impose further penalty for simple assault or accidents involving damage to property.  **See** Sentencing Order, 3/28/2013, at 1.

automobile accident without criminal negligence, particularly since the victim was extremely intoxicated crossing the middle of the street in the dark in the early morning hours?

3.     Were the verdicts for the crimes of Aggravated Assault (F-2), Simple Assault and Recklessly Endangering Another Person (M-2) and leaving the Scene of an Accident (F-3) against the weight of the evidence?  Did the evidence not show criminal negligence, particularly since the victim was extremely intoxicated?  Was the evidence also conflicting?  Did the verdicts shock the conscience?

Otero's Brief at 9-10.

Otero's first issue is a challenge to the discretionary aspects of his sentence.  Specifically, Otero alleges that his sentence exceeded the guideline ranges and that the court abused its discretion by ordering his sentences to run consecutively and by failing to state adequately on the record its reasons for imposing the sentence.  We disagree.

A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute.  Two requirements must be met before we will review this challenge on its merits.  First, an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence.  Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code.  The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis.  In order to establish a substantial question, the appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process.

*Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004) (citations omitted).

In the present case, Otero's brief contains a concise statement in compliance with Pa.R.A.P. 2119(f). Otero's Brief at 5-8, 25-26. Otero asserts that the trial court failed to consider his acceptance of responsibility, his expression of remorse, and the likelihood that he would benefit from treatment without a long period of incarceration. *Id.* at 7-8. Consequently, Otero alleges that the sentence of five to ten years for aggravated assault as a second-degree felony and two to seven years for leaving the scene of an accident was extremely excessive and that the trial court abused its discretion by running the sentences concurrently. *Id.* at 8.

To the extent that Otero claims the trial court abused its discretion by ordering the two sentences to run consecutively, we observe the following:

> Long[-]standing precedent of this Court recognizes that
>
>> 42 Pa.C.S.A. section 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion . . . does not raise a substantial question.

*Commonwealth v. Pass*, 914 A.2d 442, 446-447 (Pa. Super. 2006) (case citation omitted). Thus, Otero is not entitled to relief on this claim.

However, we have held that a substantial question is raised where an appellant alleges that the sentencing court erred by imposing an aggravated range sentence without consideration of mitigating circumstances. *Commonwealth v. Felmlee*, 828 A.2d 1105, 1107 (Pa. Super. 2003) (*en*

- 6 -

*banc*). Thus, we will address the merits of Otero's challenge to the discretionary aspects of his sentence.

Our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

***Commonwealth v. Cunningham***, 805 A.2d 566, 575 (Pa. Super. 2002) (citations omitted). More specifically, 42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's sentencing determination:

> [T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b).

In every case where a sentencing court imposes a sentence outside of the sentencing guidelines, the court must provide in open court a contemporaneous statement of reasons in support of its sentence. 42 Pa.C.S.A. § 9721; ***see also Commonwealth v. Eby***, 784 A.2d 204, 205-06 (Pa. Super. 2001).

> The statute requires a trial [court] who intends to sentence a defendant outside of the guidelines to demonstrate on the record, as a proper starting point, [its] awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as [it] also states of record the factual basis and specific

- 7 -

> reasons which compelled [it] to deviate from the guideline range.
>
> ***Commonwealth v. Gibson***, 716 A.2d 1275, 1276-77 (Pa. Super. 1998) (internal quotations omitted).
>
> When evaluating a challenge to the discretionary aspects of sentence such as the one advanced by [the a]ppellant, it is important to remember that the sentencing guidelines are advisory in nature. ***Id.*** at 1277. If the sentencing court deems it appropriate to sentence outside of the guidelines, it may do so as long as it offers reasons for this determination. ***Id.*** "[O]ur Supreme Court has indicated that if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable, we must affirm a sentence that falls outside those guidelines." ***Id.*** (citations omitted, emphasis in original).

***Commonwealth v. Bowen***, 55 A.3d 1254, 1263-64 (Pa. Super. 2012) (citations modified).

Otero contends that his sentences were excessive and that the trial court failed to state adequate reasons on the record or consider mitigating evidence. Otero's Brief at 25. Preliminarily, we observe that Otero's five-to-ten-year sentence for aggravated assault as a second-degree felony and his two-to-seven-year sentence for accidents involving injury without a license as a third-degree felony are both within the statutory maximums of ten and seven years, respectively. ***See*** 18 Pa.C.S.A. § 1103(2), (3). At sentencing, the trial court stated that it had "read the presentence investigative report [and] the prior record score." Notes of Testimony ("N.T.") Sentencing, 3/28/2013, at 4-5. Therefore, the court was entitled to deviate from the guidelines and to fashion a sentence which accounted for the sentencing factors at 42 Pa.C.S.A. § 9721(b), "so long as [it] also state[d] of record the

factual basis and specific reasons which compelled [it] to deviate from the guideline range." ***Commonwealth v. Gibson***, 716 A.2d at 1276-77. On the record, the trial court stated as follows:

> Sir, I have reviewed everything. I was present during the trial itself, obviously, and your testimony was simply incredible. It's taken ten years to get here today, and I know that the family has waited patiently and I appreciate that. And your attorney has asked for mercy.
>
> Shakespeare once said, "Nothing emboldens sin so much as mercy." And the mercy that has been shown to you all along by other Judges hasn't emboldened you to the point that I am cognizant of the fact that it was on July 12th of 2012, you picked up a new DUI after all of this.
>
> Clearly, you're not getting the point. I know a lot of time has gone by, but I also like to read poetry and Nathaniel Hawthorne once said that, "Time flies over us but leaves a shadow behind." The shadow that you left behind is the shattered life that is in this courtroom today, and it is just incomprehensible that you leave believe [*sic*] somebody by the side of the road even if it was a dog during one of the four versions you had of this accident.
>
> Clearly, based upon your testimony you have no remorse.
>
> [The trial court then announced Otero's sentence.]
>
> In doing this, I have read the presentence investigative report. I have gone over the prior record score. I find a complete lack of remorse. I find a complete disregard for human life. And I find that you are a menace to society. It is just very tragic everything that has occurred here.
>
> But it's clear that you need to be kept off the roadway, sir, and that is my sentence.

N.T. Sentencing at 33-35.

Accordingly, the trial court's stated reasons for sentencing Otero in the aggravated range included protection of the public, gravity of the offense,

and its impact upon the victim, Lisa Foley, as well as Otero's rehabilitative needs. *See* 42 Pa.C.S.A. § 9721(b). As the trial court observed, it "did not ignore mitigating factors during sentencing; it simply did not see any." T.C.O. at 5. We conclude that the trial court's departure from the sentencing guidelines was considered and not unreasonable, and thus, we affirm the judgment of sentence on this ground. *See Bowen*, 55 A.3d at 1263-64. Otero's challenge to the discretionary aspects of his sentence does not merit relief.

In his second issue, Otero contends that the verdicts for aggravated assault, recklessly endangering another person, and leaving the scene of an accident where someone was injured were not supported by sufficient evidence. *See* Otero's Brief at 41. Specifically, Otero contends that "[t]here is nothing in the records that would support a finding of recklessness and criminal negligence by Mr. Otero." *Id.* at 48. Thus, he asserts that "there was no premeditation or intentional conduct" and "the elements of the crime of Aggravated Assault, which requires attempt to cause or intentionally or knowingly causing bodily injury, have not been met." *Id.* at 52. Furthermore, "[a]s to Leaving the Scene of the Accident, one has to know there is an accident before they can leave the scene." *Id.* at 53.

We analyze Otero's arguments under the following parameters:

Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may

- 10 -

not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Trinidad*, 90 A.3d 721, 728 (Pa. Super. 2014) (citation omitted).

In his first argument, Otero contends that there is insufficient evidence of his *mens rea* to sustain his conviction for aggravated assault. **See** Otero's Brief at 52. We disagree.

Aggravated assault, in relevant part, is defined by statute as follows:

**§ 2702. Aggravated assault.**

**(a) Offense defined.** —A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1). As to the Commonwealth's burden of eliciting sufficient evidence of a defendant's *mens rea* to commit aggravated assault, we have stated:

When a victim actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm. As we noted in [**Commonwealth v. Patrick**, 933 A.2d 1043 (Pa. Super.

- 11 -

2007)], the statute's intent requirement can be met if the defendant acts recklessly under circumstances manifesting an extreme indifference to human life.

*Commonwealth v. Burton*, 2 A.3d 598, 602 (Pa. Super. 2010).

Otero argues that the Commonwealth cannot show that he was reckless inasmuch as witnesses provided "no reliable testimony of excessive speed because both the cousin and the brother of the victim did not observe Mr. Otero's car long enough to be in a position to note whether he was driving and speeding excessively" and "[n]one of the victims could refute that Mr. Otero did not turn left on to Glenwood Street." *Id.* at 46, 50. Preliminarily, we observe that Otero's challenge to the credibility of Donna Floody, John Foley, and Lisa Foley's testimony contests the weight of the evidence, not its sufficiency, and we will not disturb a trial court's credibility determinations. *See Trinidad*, 90 A.3d at 728. Furthermore, the parties stipulated to the extent of Ms. Foley's injuries. *See* N.T. Trial, 12/20/2012, at 49-51. Thus, our inquiry is whether the evidence and all reasonable inferences derived therefrom were sufficient to establish that Otero acted "recklessly under circumstances manifesting an extreme indifference to human life." *Burton*, 2 A.3d at 602.

> To prevail on a theory of recklessness in a prosecution for aggravated assault, the Commonwealth must show that the assailant's recklessness rose to the level of malice, a crucial element of aggravated assault. Malice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty, although a particular person may not be intended to be injured. Motor vehicle crashes seldom result in an aggravated assault conviction because of the

heightened *mens rea*. However, in some circumstances the malice requirement has been met, and this court has not hesitated to uphold an aggravated assault or a third degree murder charge depending on the particular facts of a motor vehicle crash.

This Court additionally concluded that a motorist's conduct is more egregious if he does not apply his [brakes] or attempt to slow down before a collision than if he attempts to flee.

***Commonwealth v. Riggs***, 63 A.3d 780, 784-85 (Pa. Super. 2012) (citations omitted) (concluding that appellant's actions in disregarding red lights and stop signs, crashing into parked cars, fleeing the scene of the accident, and exhibiting "clearly indifferent" behavior upon apprehension manifested "evidence of sustained recklessness").

This Court has summarized our Supreme Court's precedents on aggravated assault in motor vehicle crashes as follows:

In [***Commonwealth v. O'Hanlon***, 653 A.2d 616 (Pa. 1995)], a driver ran a red light and struck another vehicle, causing serious injury to another driver. Our Supreme Court reversed the appellant's conviction for aggravated assault on the basis that he was guilty only of mere recklessness, stating that "serendipity, not intention, placed the victim in his path when he drove through the red light." ***O'Hanlon***, 653 A.2d at 618. More recently, in [***Commonwealth v. Comer***, 716 A.2d 593 (Pa. 1998)], our Supreme Court reversed a conviction for aggravated assault where the appellant, who had ingested alcohol and barbiturates, drove his car at an excessive rate of speed. As he was driving, the right tire of the appellant's car rubbed the curb, and then the vehicle left the highway, crashed into a bus stop, and eventually struck a brick wall. One person was killed and another was severely injured as a result of the appellant's actions. Our Supreme Court held that the appellant's conduct, while criminally reprehensible, was nonetheless insufficient to establish the state of mind equivalent to that which seeks to cause injury.

As we noted in [**Commonwealth v. Kling**, 731 A.2d 145, 147 (Pa. Super. 1999)], however, in both **O'Hanlon** and **Comer**, our Supreme Court distinguished this Court's holding in **Commonwealth v. Scofield**, 521 A.2d 40 (Pa. Super. 1987), *appeal denied*, 535 A.2d 82, wherein we upheld the appellant's conviction for aggravated assault. In **Scofield**, the appellant was driving his car and scraped it against the bumper of another vehicle parked on the street. Although sparks emanated, Scofield drove another ten feet, swerved onto the sidewalk and struck a building. A passing cabdriver, who realized Scofield had struck a pedestrian and trapped him under the fender of the vehicle, approached Scofield's car and told him to turn off the car. The cabdriver even attempted to reach into the car and remove the keys. Scofield, however, became belligerent and assaulted the cabdriver. He then tried to put his car into reverse, but a flat tire prevented his flight. We concluded that Scofield's behavior prior to and after the accident established his awareness of the risk of serious injury, and, therefore, we upheld his aggravated assault conviction.

In distinguishing this Court's holding in **Scofield** from the case in **Comer**, our Supreme Court opined that the "circumstances [in **Scofield**] demonstrated a higher degree of recklessness than those presented in [**Comer**]," noting that in **Comer**, the appellant "sped past another vehicle, his car rubbed the curb of the sidewalk and the accident ensued immediately thereafter." **Comer**, 716 A.2d at 597. As we noted in **Kling**, "the cornerstone of this conclusion rested with the notion [that] Scofield considered, then disregarded, the threat to the life of the victim;" and, in **Comer**, our Supreme Court "indicated a conviction based on malice is appropriate where evidence demonstrates the element of sustained recklessness by a driver in the face of an obvious risk of harm to his victims." **Kling**, 731 A.2d at 149 (emphasis original).

**Commonwealth v. Allen**, 833 A.2d 800, 803-04 (Pa. Super. 2003) (citations modified).

Here, at trial, Donna Floody testified that on September 11, 2004, Lisa Foley was in the bike lane when "a white vehicle came speeding through the red light. He was going approximately 60 miles an hour when he hit Lisa.

- 14 -

She [l]anded on the vehicle and she bounced off the vehicle onto a parked car. She was thrown 25 or 30 feet and she landed . . . on her back." N.T. Trial, 12/20/2012, at 11). She did not hear the screeching of brakes or tires, and when John Foley chased after the white car, "the person driving took off." *Id.* at 12. John Foley affirmed that Lisa Foley was in the bike lane, and stated that he saw the car run the red light at high speed and strike three or four parked cars before hitting Lisa Foley. *Id.* at 37-39. Foley said he "chased the car and [the driver] hit the brake, tapped the brakes and went up another street [while] I was screaming and hollering[.]" *Id.* at 28-29. Police investigating the accident found debris from the car, and paint transfer and damage on the parked cars hit by the white car. N.T. Preliminary Hearing, 8/15/2005, at 17. After receiving a tip regarding the location of the white car on September 30, 2004, the officers matched the damage on it to the accident debris and observed that the windshield and a headlight had been replaced. *Id.* at 21-22; N.T. Motions, 4/13/2007, at 42, 59. As observed by the trial court, Otero gave at least four different explanations for what he thought he had hit, but never stopped to render assistance. *See* N.T. Sentencing, 3/28/2013, at 34-35.

The evidence shows that Otero ran a red light, drove into the bicycle lane, hit several parked cars, then struck Ms. Foley so hard that she was thrown at least twenty feet. Otero did not apply his brakes until after he hit Ms. Foley, but instead of stopping to determine what happened, he drove away. Afterward, Otero did not report the accident, but immediately

repaired the damage to his car. Thus, the circumstances of this case are in line with our holding in **Scofield**, *supra*. Based upon Otero's conduct before, during, and after the incident, the Commonwealth adduced sufficient evidence of "sustained recklessness by a driver in the face of an obvious risk of harm to his victims." **Kling**, 731 A.2d at 149; **Burton**, 2 A.3d at 602. Accordingly, the Commonwealth sustained its burden of proof of Otero's *mens rea* of recklessness to affirm his conviction for aggravated assault. **Trinidad**, 90 A.3d 721, 728; **Riggs**, 63 A.3d at 784-85.

Second, Otero argues that there is insufficient evidence to support his conviction for leaving the scene of an accident because "one has to know there is an accident before they can leave the scene." Otero's Brief at 53. This contention lacks arguable merit.

Contrary to his assertion, Otero was not convicted of leaving the scene of an accident, 75 Pa.C.S.A. § 3742 ("The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident . . . ."). Otero was convicted of accidents involving death or personal injury while not properly licensed, 75 Pa.C.S.A. § 3742.1(a) ("A person whose operating privilege was disqualified, canceled, recalled, revoked or suspended and not restored or who does not hold a valid driver's license . . . commits an offense under this section if the person was the driver of any vehicle and caused an accident resulting in injury or death of any person.").

- 16 -

It is well-settled that "the *mens rea* for a violation of 75 Pa.C.S.A. § 3742.1 is criminal negligence." ***Commonwealth v. Hurst***, 889 A.2d 624, 630 (Pa. Super. 2005). Our legislature has defined criminal negligence as follows:

> A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(4). Thus, the Commonwealth was only required to show that Otero acted with criminal negligence, not that he "[knew] there [was] an accident," as he contends. **Compare** Otero's Brief at 53, **with** 75 Pa.C.S.A. § 3742.1(a); 18 Pa.C.S.A. § 302(b)(4).

As previously discussed, the Commonwealth adduced sufficient evidence of Otero's recklessness, which would also suffice to support a finding of criminal negligence. "The concept of gross negligence is encompassed within the concept of recklessness as set forth in Section 302(b)(3) [of the Crimes Code]." ***Commonwealth v. Grimes***, 842 A.2d 432, 434 (Pa. Super. 2004) (citation omitted); **see also** ***Commonwealth v. Heck***, 535 A.2d 575, 580 (Pa. 1987) (concluding that appellee's conviction requiring finding of criminal negligence "may be sustained only if the Commonwealth's evidence established that he acted recklessly, or criminally negligently").

- 17 -

Moreover, the Commonwealth adduced circumstantial evidence in the form of the repairs to Otero's car to show that he knew he had been in an accident. N.T. Preliminary Hearing, 8/15/2005, at 21-22; N.T. Motions, 4/13/2007, at 42, 59. Critically, Otero himself testified that he was driving on the night of the incident and admitted that he "felt like they threw a rock at me," N.T. Trial, 1/22/2013, at 27, and, as the court noted, gave at least four versions of what he thought he had hit. N.T. Sentencing, 3/28/2013, at 34-35. Thus, Otero cannot reasonably claim that he did not know he had been in an accident, and the Commonwealth adduced sufficient evidence to support this conviction. 75 Pa.C.S.A. § 3742.1(a); *Trinidad*, 90 A.3d at 728. Otero's second issue does not merit relief.

Third, Otero contends that the verdicts were against the weight of the evidence. Otero's Brief at 56-57. We disagree.

> Our standard of review is well-settled:
>
> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
>
> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a [trial court's] verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience."

Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Cruz*, 919 A.2d 279, 281-82 (Pa. Super. 2007) (citations omitted).

Here, Otero incorporates by reference the arguments he set forth above under his challenge to the sufficiency of the evidence and contends that "[t]hese convictions should shock the conscience." Otero's Brief at 55-56. In addressing this issue, the trial court provided the following reasoning:

[Otero] argues that this was nothing more than an unfortunate accident that did not rise to the level of criminal negligence. This court wholeheartedly disagrees with that assertion and believes that [Otero] could easily have been guilty of vehicular homicide . . . . Ms. Foley would have been killed by [Otero's] reckless actions had her cousin, a registered nurse, not been on the scene to administer life[-]saving medical aid. [Otero] claims he did not run a red light and that he made a left hand turn onto Frankford Ave. However, several witnesses claimed he ran a red light and some estimated his speed at sixty miles per hour. While he may not have been going that fast, he was going fast enough to launch Ms. Foley twenty feet in the air. Witnesses also claimed that Ms. Foley was struck approximately three car lengths from the intersection. There is no way that [Otero] could have made a turn onto Frankford Ave[.] and been going fast enough to launch Ms. Foley that far in just three car lengths. He had to have been going straight on Frankford Ave[.] and run a red light.

[Otero] also seeks to blame the victim for contributing to her injuries through intoxication. However, Ms. Foley's admitted intoxication is of absolutely no moment here. All witnesses agreed that she had crossed into the bicycle lane before being struck and that the vehicle side swiped several parked cars. This

- 19 -

means that [Otero] had to cross over a solid white line while driving. His recklessness caused his vehicle to leave the lane of travel before striking Ms. Foley. Her intoxication is completely irrelevant since she was in the bicycle lane (where cars are not allowed to travel) when she was struck. It is no different than if she had been intoxicated and walking down the sidewalk when struck. Ms. Foley's intoxication has no bearing on the situation and her severe injuries were solely the result of [Otero's] gross recklessness.

There is absolutely nothing in evidence that would call this court's findings of fact into question. [Otero] acted recklessly and this court's finding of guilt should not be disturbed.

T.C.O. at 6-7.

As previously stated, we will not disturb the trial court's determination of the credibility of the witnesses, and likewise, its finding that Otero's version of events was incredible. *See Trinidad*, 90 A.3d at 728. We therefore cannot conclude that the trial court's reasoning represents an abuse of discretion. *Cruz*, 919 A.2d at 281-82. Accordingly, Otero's third issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2014