J-S41005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARLON CLOTTER, | |
| Appellant | No. 2079 MDA 2014 |

Appeal from the Judgment of Sentence entered November 5, 2014,
in the Court of Common Pleas of Lackawanna County,
Criminal Division, at No(s): CP-35-CR-0001884-2013

BEFORE:  ALLEN, LAZARUS, and PLATT*, JJ.

MEMORANDUM BY ALLEN, J.:                **FILED JULY 06, 2015**

Marlon Clotter ("Appellant") challenges the discretionary aspects of his sentence.  We affirm.

The trial court summarized the pertinent facts and procedural history as follows:

> On or about May 5, 2013, members of the Scranton Police Department were dispatched by the Lackawanna County Communications Center to the 700 block of Vine Street in the City of Scranton, Lackawanna County, Pennsylvania.  The nature of the call was that a male had been shot in this area.  Upon their arrival the police found a black male, later determined to be Rashan Crowder, lying in the roadway with a gunshot wound to the chest.
>
> Medical personnel were summoned and arrived at the scene.  These personnel unsuccessfully initiated life saving measures.  They subsequently transferred Mr. Crowder to Geisinger Community Medical Center.  The victim, Rashan Crowder, was later pronounced dead at Geisinger.

*Retired Senior Judge assigned to the Superior Court.

On May 6, 2013, an autopsy was performed by a forensic pathologist on the decedent. The results of the autopsy as noted by Lackawanna County Coroner Tim Rowland indicated that Crowder, the decedent, had sustained two gunshot wounds, one to the chest and one to his right thigh. The cause of death was the gunshot wound to his chest. The manner of death was listed as homicide. As a result of the autopsy findings the police began a criminal investigation into this incident.

The police investigation determined that Crowder was a student at Lackawanna College and lived near the site of his death in the Tobin Hall dormitory. Numerous witnesses, not all in concurrence, led police to conclude what occurred on or about May 5, 2013.

Decedent Crowder was apparently accompanied on that fateful night by a friend named Shaquille Isbell. Isbell was an eye witness [sic] to the relevant events. Isbell told police that he was a friend of decedent Crowder and attended Lackawanna College with him.

Earlier that evening Isbell and Crowder attended a house party in the 400 block of Monroe Avenue in Scranton about two blocks from the area of the shooting. There may have been some words exchanged at the party, but Isbell and Crowder left that party and walked to other locations in their hill section neighborhood and to a mini mart and returned to their dormitory. After the passage of time Isbell and Crowder left their dormitory and went back to the mini mart.

Upon leaving the mini mart to return once again to their dormitory they happened upon a group of males and females on the corner of Monroe Avenue and Vine Street just up the street from the original party earlier that evening. The two groups began to give each other "attitude" and trash talking and insults back and forth. The unfortunate result of this exchange was that a male member of the group produced a handgun firing at Rashan Crowder striking him in the right thigh. After the shooting, a University of Scranton security car happened to arrive at the scene thus causing the two groups to separate and walk down the 800 block of Vine Street from Monroe Avenue towards Madison Avenue, the location of the Tobin

Hall dormitory. During this one block plus walk, words, trash talk and insults resumed.

The arguments continued beyond Madison Avenue on Vine Street to an area in the 700 block of Vine Street near Moir Court. At that point, a second male from the group begins to goad the male into shooting the decedent for a second time. Repeatedly, the second male encourages and urges the first male to fire again. When the second shot occurs, it hits Decedent Crowder in the chest fatally injuring him. At that point, the group of males and females all flee the area.

Subsequent investigation and security video review revealed that the shooter was Ryan Harding, the man holding the gun. [Appellant] was also identified as the male coaxing, encouraging and goading Ryan Harding to fire shots at decedent Crowder.

[Appellant] was born on September 10, 1991, one of eight children. His mother abused drugs and alcohol, thus providing a traumatic childhood which began where he was born in Queens, New York. He moved at various times to Atlanta, Georgia and Scranton to stay with relatives or in foster homes. From 2008 to 2012, [Appellant] was incarcerated in SCI Pine Grove.

[Appellant] has a GED he earned while he was incarcerated. He also has an extensive history of drugs and alcohol abuse. His extensive history also extends to the legal system. As a juvenile, [Appellant] was arrested fourteen times and convicted of numerous crimes involving physical assault. Despite [Appellant] being placed in numerous juvenile facilities, he continued to repeat his mistakes and past pattern of behaviors.

Often while under supervision for one crime, [Appellant] would be arrested for another. At age seventeen, he was convicted as an adult. Tellingly, while under state parole supervision for that offense, [Appellant] committed the instant offense.

\*\*\*

On August 30, 2013, [Appellant's] preliminary hearing was held before Magisterial District Judge Sean McGraw.

On September 30, 2013, by order of President Judge Thomas J. Munley, the undersigned was appointed to preside over this case. On November 7, 2013, discovery deadlines were set as well as a tentative trial date for August of 2014. On November 6, 2013, the District Attorney for Lackawanna County issued a four count bill of information against [Appellant]. [Appellant] was formally arraigned the same day.

On January 15, 2014, defense counsel filed an extensive omnibus motion on behalf of [Appellant]. The Commonwealth responded to the omnibus on February 4, 2014. On July 3, 2014, the Court decided [Appellant's] voluminous omnibus motion.

On July 11, 2014, the Commonwealth filed an amended bill of information containing five counts against [Appellant]. The additional fifth count was criminal conspiracy to commit aggravated assault[.] On that same day, [Appellant] entered a guilty plea to one count of criminal conspiracy to commit aggravated assault. All other charges were dropped. [The] Commonwealth agreed to recommend a minimum sentence of not more than seven years.

On November 3, 2014, a sentencing memorandum was filed on behalf of [Appellant] which was thoroughly reviewed by the Court prior to sentencing. On November 5, 2014, a joint sentencing hearing was held for both [Appellant] and the shooter, Ryan Harding. After consultation with the court reporter, it was determined that this joint proceeding began on November 5, 2014 at 10:01 a.m. and concluded at 1:30 p.m. It is most unusual for a sentencing proceeding to take three and one-half hours even if a joint one. In this case, it was done to allow extensive victim/family/friend testimony and also to allow [Appellant] substantial allocution. [After engaging in a dialogue with Appellant regarding the circumstances of the crime and his recent county prison misconducts, the trial court sentenced Appellant to a term of seven to seventeen years of imprisonment.]

Subsequent to sentencing, on November 10, 2014, counsel for [Appellant] filed a Reconsideration of Sentence.

> That motion was denied on November 12, 2014, by order of this Court.

Trial Court Opinion, 2/10/15, at 1-5 (citation omitted). This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues:

> A. Whether the [trial] court committed an abuse of discretion by imposing a sentence in excess of the aggravated range where there were no circumstances warranting a sentence above the aggravated range?
>
> B. Whether the sentence imposed was inappropriately harsh and excessive and an abuse of discretion?
>
> C. Whether the [trial] court failed to take into consideration that [Appellant] is a product of particular circumstances and conditions of environment that were not fully and completely explored in the pre-sentencing report?

Appellant's Brief at 4.[1]

A challenge to the discretionary aspects of a sentence is not appealable as of right. Rather, Appellant must petition for allowance of appeal pursuant to 42 Pa.C.S.A. § 9781. ***Commonwealth v. Hanson***, 856

---

[1] Because Appellant entered an open plea to the crime for which he was convicted, his challenge to the discretionary aspects of his sentence is properly before us. ***See Commonwealth v. Ritchey***, 779 A.2d 1183, 1185 (Pa. Super. 2001) (explaining that where there have been no sentencing restrictions in the plea agreement, the entry of a guilty plea will not preclude a challenge to the discretionary aspects of sentencing).

A.2d 1254, 1257 (Pa. Super. 2004). When an appellant challenges a discretionary aspect of sentencing, we must conduct a four-part analysis before we reach the merits of the appellant's claim. ***Commonwealth v. Allen***, 24 A.3d 1059, 1064 (Pa. Super. 2011). In this analysis, we must determine: (1) whether the present appeal is timely; (2) whether the issue raised on appeal was properly preserved; (3) whether Appellant has filed a statement pursuant to Pa.R.A.P. 2119(f); and (4) whether Appellant has raised a substantial question that his sentence is not appropriate under the Sentencing Code. ***Id.***

In the instant case, Appellant filed a timely notice of appeal, and properly preserved his claim in a post-sentence motion. Additionally, Appellant has complied with Pa.R.A.P. 2119(f). ***See*** Appellant's Brief at 8-9. We must therefore determine whether Appellant has raised a substantial question for our review.

A substantial question will be found where the defendant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process. ***Commonwealth v. Ventura***, 975 A.2d 1128, 1133 (Pa. Super. 2009) (citations omitted). Here, within his 2119(f) statement Appellant argues:

> [Appellant] asserts that the [trial] court erred when it imposed a sentence above the aggravated range where the totality of the circumstances was neither so unique nor egregious to warrant the imposition of such a sentence. As such, he argues that the [trial] court committed an

- 6 -

abuse of discretion and/or the sentence was contrary to the guideline provisions of the Sentencing Guideline[s] when it sentenced him.

\*\*\*

Counsel for Appellant recognizes that the sentence imposed herein was within the statutory limits. Nevertheless, [Appellant] argues that the [trial] court committed a manifest abuse of discretion when it imposed a sentence outside the aggravated range. He submits that the circumstances surrounding the commission of the crime did not warrant the imposition of an aggravated sentence. As such, [Appellant] believes that the sentence was harsh and unreasonable and an abuse of discretion warranting a review by [Superior] Court.

Appellant's Brief at 8-9.

We view the arguments in Appellant's Rule 2119(f) statement essentially to assert that in sentencing Appellant, the trial court failed to engage in individualized sentencing. We find this claim to raise a substantial question. *See Commonwealth v. Marts*, 889 A.2d 608, 613 (Pa. Super. 2005) (concluding such a claim raises a substantial question because it "essentially challenges the adequacy of the reasons given by the court for its sentencing choice"); *see also Commonwealth v. Dunphy*, 20 A.3d 1215, 1222 (Pa. Super. 2011) (explaining that a claim that the sentencing court failed to give specific reasons for sentencing raises a substantial question).

The standard employed when reviewing the discretionary aspects of sentencing is very narrow. *Commonwealth v. Koren*, 646 A.2d 1205, 1208 (Pa. Super. 1994). We may reverse only if the sentencing court abused its discretion or committed an error of law. *Id.* We must accord the

sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime. *Id.* Because the trial judge is in the best position to view a defendant's "character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime," *Commonwealth v. Hess*, 745 A.2d 29, 33 (Pa. Super. 2000), we generally defer to the trial judge's assessment of the defendant and the evidence in fashioning a proper sentence.

After considering the arguments of the parties, and Appellant's explanation for his actions, the trial court imposed a seven to seventeen-year sentence. In doing so, the trial court provided the following reasons:

> THE COURT: Okay, there's a plea bargain that is guiding the court's minimum here. But I think because the matter brings [Appellant] into the aggravated range, I have to look at other factors as well before I accept it. And this is obviously a serious offense that [Appellant] pled to criminal conspiracy for aggravated assault. However, [Appellant] has been involved in the criminal justice system since the age of 13 and extensively and with great opportunity to correct himself because I think if my count is accurate, about 14 times in the juvenile system. Then, he goes into the adult system with his last offense. Then, he serves time at Pine Grove. Then, he comes out of Pine Grove and he's on parole when this offense takes place, okay? Understanding that [Appellant] may have an extensive substance abuse history, I don't view that as an excuse. I view that as a choice that he's making. At the time that this is going on, it's on a public street. There's a lack of concern for the other people involved. Because this isn't just three people involved here. There's a crowd of people on both sides, both with him and with the decedent, Mr. Crowder. While [Appellant's] been in jail pending sentence, he hasn't been

- 8 -

complying with the prison rules. I mean, I think - - what I might have in front of me is a defendant that wants to make progress, but isn't doing a good job of it. I have to take all of that into consideration. And I also have to take into consideration that as a relatively young man, even with the type of sentence that is being imposed here, [Appellant's] going to get out of jail as a very young man. And two things can happen when you get out of jail, you can improve yourself, go to school and make a positive contribution to your life and to society. Or you could fall back in with the same people that you've constantly been able to find every time that you got out of juvenile and even when you got out of the state correctional institution. And if you do that, maybe you wouldn't be back here, maybe you'll be the person in the casket next time. You need to think about that. I don't consider what [the prosecutor] says in terms of future activity because I don't have a crystal ball. But you need to think about whether he is right about where your lifestyle that you have chosen so far is leading you. I don't see any good endings including the one that's in front of me right now. Going to jail is a lousy ending. Getting killed is an even worse ending. So I think in order to give the public the benefit of some sort of safety coming out of this, I want to put a longer tail on this than 14 years. But I am not going to go to the maximum. So [Appellant] is going to be sentenced for a minimum of 7 years to a maximum of 17 years. The determination as to how much of that sentence is served and how much is not served really doesn't lie with the court. Because you have 30 days within which to appeal what the court has done, here, okay. And once that 30 days lapses, my jurisdiction over you gets sent to the Department of Corrections. And they're going to determine based upon how you behave in jail how much of that you serve. Now, let me use an example. If you act like you've been acting in the Lackawanna County Prison, they may want you to serve 17. If you are, in fact, serious about getting your life together and you start taking courses and you become a positive influence in there, you may serve 7. A great deal of that is under your control and according to your behavior. But you need to understand - - you need to understand that you govern how that happens. And then, the Department of Corrections makes its recommendation to the Board of

Probation and Parole. You've been through SCI Pine Grove. And that's going to determine how you come out. But even if you get out, you've got a long tail on, you've got a long parole on you. So you need to recognize that you need to change your life for a long time if you intend to do anything with yourself in the future.

N.T., 11/5/14, at 116-120. With the above comments, the trial court thoroughly explained its decision to deviate from the applicable sentencing guideline ranges. Thus, we cannot conclude Appellant's sentence is "unreasonable." **Griffin**, **supra**.

Our careful review of the record refutes Appellant's claims to the contrary. Appellant first refers to the trial court's failure to accept his version of the shooting. Appellant's Brief at 10. According to Appellant, "he knew about the first impact, but not necessarily the second." N.T., 11/5/14, at 94. As explained by the trial court in its Pa.R.A.P. 1925(a) opinion, Appellant's version is of little significance:

> The encounter leading to the first shot to Crowder's thigh occurred on Monroe Avenue and Vine Street. [Appellant] and his group could have retreated down Monroe Avenue to diffuse the situation and the victim also had the means and opportunity to retreat throughout.
>
> Other avenues of retreat existed in the alley west of Monroe Avenue between Monroe Avenue and Madison Avenue. A third opportunity to retreat also existed on Madison Avenue itself. Finally, they fled in Moir Court after the second and fatal shot. Four opportunities to avoid confrontation were squandered by [Appellant]. These opportunities to retreat were being encouraged by some of [Appellant's] group. Even if [Appellant] initially failed to consider retreat he was encouraged to walk away by Corey Williams and instead he stayed and encouraged escalating the use of the gun to increase the violence and danger rather than decrease it. Such poor judgment must be

considered as this Court believes it persists within [Appellant] to the date of sentencing.

Trial Court Opinion, 2/10/15, at 8-9.

As the trial court stated many times during the sentencing hearing, the significant factor surrounding the shooting was Appellant's actions in "bringing a gun to a fist fight, encouraging the gun's use and ignoring opportunities that were pointed out to him." *Id.* at 11. It is well settled that when sentencing a criminal defendant, "the trial court is permitted to consider the seriousness of the offense and its impact on the community." *Marts*, 889 A.2d at 615 (citation omitted).

The record also refutes Appellant's claim that in sentencing him the trial court improperly "double-counted" his prior record. Appellant's Brief at 12. Rather, we view the trial court's discussion regarding Appellant's lengthy prior record as demonstrating that past attempts at rehabilitation have not only failed, but also led to additional crimes. *See e.g.*, *Commonwealth v. Gibson*, 716 A.2d 1275, 1279 (Pa. Super. 1998) (holding that sentence outside guidelines was justified because, *inter alia*, the appellant disregarded an earlier opportunity to reform). As further explained by the trial court:

> [Appellant's involvement within the juvenile system] was frequent and repetitive. In virtually every instance, [Appellant] chose to reach out to undesirable peer groups for the absent family support rather than to the counselors that were dedicated to trying to help [him] lead a more productive life as a juvenile. [Appellant] admits at sentencing this led him to become a member of the Crips gang at least for a time.

- 11 -

His juvenile involvement led to serious involvement with the adult criminal justice system. He was convicted and sentenced to SCI Pine Grove where he served adult time and was paroled on state parole. [Appellant] was under state parole supervision when this present case occurred.

[Appellant] has a documented penchant for repeating his mistakes and making the wrong decisions throughout his young life. He alleges he is making progress because now he will accept responsibility for his criminal actions rather than trying to make excuses for them. Despite extensive discussions with the Court, we remain unconvinced that [Appellant] sees the need to stop the criminal actions which compel his need to accept responsibility. In other words, he allegedly accepts responsibility now for the impact of his actions without recognizing a need to cease those actions which are the cause of his acceptance of responsibility in the first instance.

Trial Court Opinion, 2/10/15, at 13-14.

Our review of the record further refutes Appellant's claim that the trial court's "sentence totally ignored the rehabilitation element of sentencing." Appellant's Brief at 15. As amplified by the trial court in its Pa.R.A.P. 1925(a) opinion:

The sentence as fashioned also tries to address [Appellant's] potential for rehabilitation. It is a seven year minimum. If [Appellant] behaves in prison and takes advantage of prison's educational opportunities he could be out long before his seventeen year maximum. In being on parole, it is hoped that the structure of future parole supervision out of jail would afford [Appellant] the discipline needed to thrive on the outside. Tellingly, this crime occurred while on state parole from SCI Pine Grove. It is hoped that a future parole experience will benefit [Appellant] from this experience and be more successful. The long tail, though less than the statutory maximum, hopefully insures [Appellant] remains motivated to correct his past behavior and lifestyle.

- 12 -

Trial Court Opinion, 2/10/15, at 9. "[T]he fact that Appellant disagrees with the sentencing court's conclusion regarding his rehabilitative potential does not render the sentence imposed an abuse of discretion." *Marts*, 889 A.2d at 615 (citation omitted).

Finally, we reject Appellant's assertion that the trial court "failed to take into consideration that [he] is a product of particular circumstances and conditions of environment that were not fully and completely explored in the pre-sentencing report[.]" Appellant's Brief at 16 (emphasis omitted). At sentencing, Appellant's counsel was given the opportunity to supplement and/or make corrections to the pre-sentence report, and enumerated several "mitigating factors." *See* N.T., 11/5/14, at 70-77. In its Pa.R.A.P. 1925(a) opinion, the trial court explained:

> The Court had the benefit of all the written materials in the pre-sentence report as well as last minute filings and letters.
>
> The report referenced that [Appellant] had a difficult up-bringing [sic] with a substance dependent mother and an absent father. The dysfunctional family situation created a need for his placement with family, friends and foster care. Unfortunately, this added to the emotional instability of [Appellant's] childhood with a geographic instability as well. Probably as a result of these unfortunate circumstances, [Appellant] began to act out and become involved with [the] juvenile justice system.
>
> ***
>
> We believe, given the benefit of a thorough pre-sentence report, an extensive juvenile record along with an adult record and with recent prison misconducts, that we have a grasp of [Appellant's] particular circumstances. The extensive colloquy between this Court and [Appellant]

at the November 5, 2014 sentencing hearing only confirms our impression that we have a grasp of [Appellant's] particular circumstances.

[Appellant] is articulate and likeable but his record of poor judgment in terms of with whom he chooses to associate, juvenile adjudications and his adult conviction record prior to this mandate our decision.

Trial Court Opinion, 2/10/15, at 13-14.

Appellant's allegation that the sentencing court "failed to consider" or "did not adequately consider" various factors is, in effect, a request that this Court substitute its judgment for that of the trial court. This we cannot do. While Appellant attempts to minimize his conduct during the shooting, the weight to be assigned this factor, as well as other factors, was properly for the trial court. *See*, *Koren*, *supra*.

In sum, because we cannot conclude that Appellant's sentence is unreasonable, we affirm his judgment of sentence. *Griffin*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/2015