J-S13007-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ISAAC BILAL PEARSON, | |
| Appellant | No. 1158 EDA 2016 |

Appeal from the Judgment of Sentence Entered March 7, 2016
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0004988-2015

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED APRIL 18, 2017**

Appellant, Isaac Bilal Pearson, appeals from the judgment of sentence of an aggregate term of 17 to 34 years' incarceration, imposed after a jury convicted him of two counts of trafficking in individuals, 18 Pa.C.S. §§ 3011(a)(1) and (a)(2), promoting prostitution, 18 Pa.C.S. § 5902(b)(3), and criminal use of a communication facility, 18 Pa.C.S. § 7512(a).  After careful review, we affirm.

We need not reiterate the lengthy factual history of this case, as the trial court provided a detailed summary of the facts underlying Appellant's convictions in its April 4, 2016 opinion denying his post-sentence motions, which the court adopted for purposes of its Pa.R.A.P. 1925(a) opinion.  ***See***

_____

[*] Former Justice specially assigned to the Superior Court.

Trial Court Opinion (TCO), 4/4/16, at 3-7; *see also* Trial Court Rule 1925(a) Opinion, 4/27/16, at 2-3 (adopting its April 4, 2016 opinion to address the claims Appellant raises on appeal). We need only note that herein, Appellant sets forth a three-page Statement of the Questions Presented, in which he raises four issues that can be paraphrased as follows:

1. Was the verdict against the weight of the evidence?

2. Did the court consider improper facts in imposing statutory maximum sentences for each of Appellant's convictions?

3. Did Appellant's conviction of promoting prostitution merge with his conviction of trafficking in individuals?

4. Did the court err in failing to suppress evidence seized from Appellant's cell phones, where the search warrant stated it was to be executed no later than 10:29 a.m. on October 2, 2015, but the warrant was not executed until October 7, 2015?

*See* Appellant's Brief at 4-6.

We have reviewed the thorough and well-reasoned opinion drafted by The Honorable Maria L. Dantos of the Court of Common Pleas of Lehigh County. We conclude that Judge Dantos's opinion accurately and thoroughly disposes of the first two issues raised by Appellant, in which he challenges the weight of the evidence to sustain his convictions, and the discretionary aspects of his sentence. *See* TCO at 2-11. Accordingly, we adopt Judge Dantos's decision as our own on those two issues.

In Appellant's third issue, he contends that his conviction for promoting prostitution should have merged with his conviction for trafficking individuals. This claim implicates the legality of Appellant's sentence. *See*

*Commonwealth v. Baldwin*, 985 A.2d 830, 833 (Pa. 2009) ("Whether [an] [a]ppellant's convictions merge for sentencing is a question implicating the legality of [the] [a]ppellant's sentence."). The statute governing the merger of offenses for sentencing purposes states:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. In other words, section 9765 "prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." *Baldwin*, 985 A.2d at 833.

Here, Appellant's underdeveloped argument does not convince us that in this case, his crime of promoting prostitution merged with his offense of trafficking in individuals. Notably, Appellant does not even acknowledge, let alone challenge, the trial court's conclusion that he "committed more than one single criminal act…." *See* TCO at 13. Additionally, in regard to the elements portion of the test for merger, Appellant merely sets forth the statutory definitions of the two, at-issue offenses, and then abruptly ends his argument without any discussion of how the elements of promoting prostitution are subsumed within the elements of trafficking in individuals. *See* Appellant's Brief at 24. In sum, Appellant's inadequate argument in

- 3 -

support of his third issue is insufficient to convince us that his merger claim has merit.

In Appellant's fourth issue, he contends that the trial court erred by denying his pretrial motion to suppress, where the search of three cell phones recovered from his vehicle at the time of his arrest was illegal. Appellant argues that the search of the phones was unlawful because the warrant permitting that search had expired at the time the phones were examined.

Our review of the record reveals that Appellant failed to present this claim before the trial court. Instead, Appellant - who was acting *pro se* when he litigated his pretrial motion to suppress - argued that his three cell phones were illegally **seized** from his vehicle at the time of his arrest. **See** N.T. Pretrial Hearing, 12/17/15, at 9-10. The suppression court only addressed this claim, concluding that the seizure of the phones was lawful. **See** Suppression Court Opinion, 12/23/15, at 17-18. Appellant did not challenge, and the trial court did not assess, the validity of the subsequent **search** of the cell phones, which was conducted after a warrant was obtained. Moreover, even if Appellant's challenge to the **seizure** of the phones could be viewed as encompassing his claim that the **search** of the phones was illegal, Appellant does not cite to where in the record he specifically contended that the search was conducted after the warrant had purportedly expired. Accordingly, because it is apparent that this specific

claim was never presented to the trial court, it is "waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/18/2017

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA

### CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
)
vs. ) Case No. 4988/2015
)
ISAAC PEARSON, )
Defendant )

\* \* \* \* \* \* \* \*

APPEARANCES:

      ROBERT W. SCHOPF, ESQUIRE,
      DEPUTY DISTRICT ATTORNEY,
         On behalf of the Commonwealth

      ROBERT LONG, ESQUIRE,
         On behalf of the Defendant

\* \* \* \* \* \* \* \*

### OPINION

MARIA L. DANTOS, J.

A jury trial was conducted in the within matter from February 1, 2016 through February 3, 2016. At the conclusion of the trial, the jury found the Defendant, Isaac Pearson, guilty of two (2) counts of Trafficking in Individuals,[1] Promoting Prostitution,[2] and Criminal Use of Communication Facility.[3] Thereafter, on March 7, 2016, the Defendant was sentenced to a term of state imprisonment of not less than five (5) years nor more than ten (10) years on each of the two (2) counts of Trafficking in

---

[1]    18 Pa. C.S.A. § 3011(a)(1) and 18 Pa. C.S.A. § 3011(a)(2).
[2]    18 Pa. C.S.A. § 5902(b)(3).

## APPENDIX B

Individuals; to a term of state imprisonment of not less than three and a half (3 ½) years nor more than seven (7) years on the charge of Promoting Prostitution; and to a term of state imprisonment of not less than three and a half (3 ½) years nor more than seven (7) years on the charge of Criminal Use of Communication Facility. All of sentences were ordered to run consecutively to each other, for an aggregate term of state imprisonment of not less than seventeen (17) years nor more than thirty-four (34) years. Presently before this Court is Defendant's Post Sentence Motion pursuant to Pennsylvania Rule of Criminal Procedure Rule 720. In his Post Sentence Motion, the Defendant filed a Motion for a New Trial, challenging the weight of the evidence. Additionally, the Defendant requests that this Court modify and reduce the sentence imposed.

*A. Challenging the Weight of the Evidence*

The Defendant alleges that the verdict was against the weight of the evidence. This Court notes that a motion for a new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict, but contends that it is against the weight of the evidence. Commonwealth v. Widmer, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000); Commonwealth v. Bennett, 827 A.2d 469, 481 (Pa. Super. 2003). Furthermore, a challenge that the verdict is against the weight of the evidence requires this Court to conclude in its discretion that "the verdict is so contrary to the evidence as to shock one's sense of justice." Lyons, 833 A.2d at 258. Indeed, for a new trial to lie on a challenge that the verdict is against the weight of the evidence, the evidence must be

---

3    18 Pa. C.S.A. § 7512(a).

2

so tenuous, vague and uncertain that the verdict shocks the conscience of the court." Commonwealth v. Shaffer, 722 A.2d 195, 200 (Pa. Super. 1998). See also Commonwealth v. Sullivan, 820 A.2d 795, 806 (Pa. Super. 2003).

In the instant case, the evidence presented at trial revealed that on February 2, 2015, Detective Jason Krasley of the Allentown Police Department Vice and Intelligence Division was conducting a prostitution investigation. Detective Krasley had responded to an ad[4] placed on the internet that led to the exchange of text messages with a female, later identified as Elizabeth Lopez. The female made arrangements to meet Detective Krasley at a specific room at the Royal Motel on Airport Road and East Congress Street, Allentown, Lehigh County, Pennsylvania. Detective Krasley[5] proceeded to the designated room at the Royal Motel as instructed. He saw the Defendant, later identified as Isaac Pearson, leave the motel room and get into a dark-colored vehicle.[6] Once Detective Krasley was inside the motel room, Ms. Lopez offered to have sex with him for money. When Detective Krasley asked to use the bathroom, another female, later identified as Kelly Favazza, exited from the bathroom. Ms. Lopez was arrested for prostitution[7] and Ms. Favazza was arrested for possession of drug paraphernalia.[8]

---

[4]     The ad included a narrative, a photograph of a woman in provocative poses, and the contact number of 484-353-3152.

[5]     When Detective Krasley arrived in the parking lot of the Royal Motel, he parked his vehicle and texted the female.

[6]     This vehicle was followed out of the area by Sergeant Roca of the Allentown Police Department.

[7]     Ms. Lopez was helping Ms. Favazza pay for the motel room through prostitution.

[8]     Specifically, Ms. Favazza had in her possession empty waxine bags and used hypodermic needles. Detective Krasley spoke with Ms. Favazza prior to booking. Ms. Favazza informed Detective Krasley that her drug addiction was out of control and that she was in a bad living situation. Detective Krasley offered to help her through providing services to her when she was ready, and he furnished her with his business card and the contact information for Agent Stephanie Snyder, a special agent for the Department of Homeland Security who

Kelly Favazza related that she is twenty-nine years old, and had a horrible heroin addiction. At the time of her arrest, Ms. Favazza was homeless and penniless. Previously, she had been staying at a recovery house, where she met the Defendant, an employee of the recovery house. Ms. Favazza had been using heroin while staying at the recovery house, and the Defendant provided her with heroin.[9] The Defendant had arranged for Ms. Favazza to leave the recovery house and stay at a motel. The Defendant posted Ms. Favazza's photograph on backpage.com and had a cellular telephone with which to receive responses from the posting.[10] (C. Ex. 1). The Defendant expected Ms. Favazza to pay him back for the drugs and the motel room through prostituting herself. Consequently, she would provide sex to men four (4) or five (5) times a day, seven (7) days a week, in order to pay back the Defendant. Through her prostituting herself, Ms. Favazza made approximately Two Hundred fifty ($250.00) to Four Hundred ($400.00) Dollars a day. She immediately turned over all of the money that she made directly to the Defendant.[11] While Ms. Favazza was prostituting herself, the Defendant controlled her through limiting the amount of heroin that he would give to her. Ms. Favazza explained that the Defendant

---

works in human trafficking. Ultimately, no charges were filed against Ms. Favazza in relation to this day's events. Ms. Favazza eventually took Detective Krasley up on his offer to help her on or around February 20, 2015. At this time, she left the Defendant and, with the assistance of Detective Krasley, entered a drug rehabilitation facility.

9 Ms. Favazza indicated that the Defendant provided heroin to Ms. Lopez as well.

10 Moreover, the Defendant coached Ms. Favazza as to how to pose for the photographs that he took of her to post on backpage.com, and what to say to the men when they arrived at the motel room. (C. Ex. 1). In addition, the Defendant set the prices for her services, and provided her with the provocative and skimpy clothing that she wore in the photographs posted on backpage.com. (C. Ex. 1). Ms. Favazza's name on backpage.com was "Sabrina" and "Sari." (C. Ex. 1).

11 Many times the Defendant waited in his vehicle and immediately returned to collect the money after the man left the motel room. Also, Ms. Favazza testified that the Defendant was a student at Lehigh Carbon Community College and did not hold down a job. Even though he was not gainfully employed, the Defendant always had a great deal of cash on his person.

4

manipulated her into thinking that the money that she made would ultimately benefit her, and that he loved her.

Detective Krasley also spoke with Shelly Dewitt, the Defendant's girlfriend. Detective Salvatore Aprile of the Allentown Police Department had provided Detective Krasley with Ms. Dewitt's contact information. Specifically, Ms. Dewitt had contacted the auto theft force and spoke with Detective Aprile because she suspected that the Defendant had stolen her vehicle that she had rented from Enterprise Rental Car. Ms. Dewitt had informed Detective Aprile that the Defendant promoted prostitution on backpage.com and that he was using a "little white girl" as a prostitute. Ms. Dewitt was forthright in providing contacting information about the Defendant to the authorities because she wanted the Defendant apprehended and her vehicle returned to her. When Detective Krasley spoke directly with Ms. Dewitt, she provided him with three (3) cell phone numbers for the Defendant, informing him that these numbers were involved in prostitution.

On March 12, 2015, Detective Krasley saw a post on backpage.com for a Beautiful Latina, with a telephone number matching one that had been provided to him by Ms. Dewitt. (C. Ex. 1). Detective Krasley utilized the telephone number provided on backpage.com, 610-972-8002,[12] and he was instructed to go to Room 216 at the Roadway Inn on Downeyflake Lane, Allentown, Lehigh County, Pennsylvania. (C. Ex. 1; C. Ex. 2). At approximately 12:00 P.M., when Detective Krasley arrived at the Roadway Inn utilizing the rear door, a Hispanic woman, later identified as Angelie Schular, opened the door of Room 219 and told him that it was she who he was

---

[12] Detective Krasley had seen other ads on backpage.com linked to this cell phone

5

looking for. After the agreement was reached regarding the exchange of sex for money, Ms. Schular took off her clothes. At this point, Ms. Schular was detained and interviewed. She informed Detective Krasley that her pimp was a black male named Jay a/k/a Cap a/k/a Buddy. Then, in Detective Krasley's presence, she placed a call to the Defendant's cell phone at 908-343-7621. Detective Krasley could hear a male answer the phone and state that he was on his way.

At this point, Detective Krasley notified other units of the situation and requested assistance in the arrest. Approximately ten (10) to fifteen (15) minutes later, the Defendant arrived in a silver Chevrolet. Detective Krasley instructed the marked units to detain the Defendant, as the Defendant had an outstanding felony warrant for auto theft.

At the time of the Defendant's arrest, he had Nine hundred five ($905.00) Dollars on his person. He also had three (3) cell phones in the front cabin section of the vehicle.[13] (C. Ex. 6). Furthermore, Detective Krasley dialed the number that Ms. Schular had called earlier and one (1) of the Defendant's cell phones rang, displaying Detective Krasley's telephone number. Detective Krasley also dialed another number linked to backpage.com, 484-951-3833, and a second cell phone that he had in his possession rang and displayed Detective Krasley's telephone number. The Defendant was the sole occupant and registered owner of the vehicle.

Detective Krasley applied for and was granted a search warrant for the Defendant's three (3) cell phones that were located in the front driver side and console

number. (C. Ex. 1).
[13] At the time of the Defendant's arrest, Detective Alex De La Iglesia of the Allentown Police Department patted down the Defendant for officer safety. He located the money on the Defendant. Detective Alex De La Iglesia also located the three (3) cell phones in the Defendant's

6

area of his vehicle. (C. Ex. 3); (C. Ex. 6). A forensic analysis was done on the cell phones at DeSales University by Jonathon Langton, an expert in digital forensics.[14] (C. Ex 4); (C. Ex. 6). A review of the browsing history revealed photographs of the scantily clad women that were posted on backpage.com, extremely frequent visits to the backpage.com website, as well as a video of the Defendant coaching Shelly Dewitt to try to get a girl to return to work for him.

In addition, the Defendant's telephone calls were monitored while he was housed in the Lehigh County Jail. (C. Ex. 5); (C. Ex. 5A). On some of these monitored calls, the Defendant talked about being a pimp and controlling his girls. (C. Ex. 5); (C. Ex. 5A). He detailed that the girls need to listen to him and that he would not tolerate them stepping out of line. (C. Ex. 5); (C. Ex. 5A).

From the evidence recounted above, it is reasonable for the jury to have concluded that the Defendant recruited, enticed, solicited, harbored, transported, provided, obtained or maintained Ms. Favazza, and that he knew that Ms. Favazza would be subject to involuntary servitude, and that he benefitted financially from it, and that he controlled Ms. Favazza's access to heroin; and that he encouraged and induced Ms. Favazza to become or remain a prostitute; and that he used his cellular telephone to promote and facilitate prostitution. In light of this abundant evidence enumerated above, the Defendant's challenge to the weight of the evidence must fail.

---

vehicle. (C. Ex. 6).
[14] All three (3) cell phones were analyzed. However, the Alcatel and Samsung feature phones were not supported by the analyst's tools, and consequently he was unable to extract data from these two (2) phones. In contrast, the Samsung smart phone data was usable. (C.

7

*B. Motion to Modify and Reduce Sentence*

Finally, the Defendant argues that the sentence imposed was harsh and manifestly excessive, in that this Court considered improper factors in imposing this sentence. The Defendant is challenging the discretionary aspects of sentencing. Commonwealth v. Bishop, 831 A.2d 656, 660 (Pa. Super. 2003). Initially this Court notes that:

> Sentencing is within the sound discretion of the sentencing judge, and that decision will not be disturbed absent an abuse of discretion. Commonwealth v. Jones, 418 Pa. Super. 93, 613 A.2d 587, 591 (1992)(*en banc*). "To constitute an abuse of discretion, the sentence imposed must either exceed the statutory limits or be manifestly excessive." Commonwealth v. Gaddis, 432 Pa. Super. 523, 639 A.2d 462, 469 (1994). Nevertheless, sentencing guidelines are merely advisory, and the court may, in its discretion, sentence outside the guidelines. When a trial court deviates from the guidelines, it must state its reasons for deviation on the record at the time of sentencing or in a contemporaneous written statement. Commonwealth v. Lawson, 437 Pa. Super. 521, 650 A.2d 876, 881 (1994). The court must also consider the guidelines as a starting point and deviate so as to impose a sentence consistent with both the public's safety needs and the defendant's rehabilitative needs. Id.

Commonwealth v. Shaffer, 722 A.2d 195, 198-199 (Pa. Super. 1998). If "the sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable," its responsibilities have been fulfilled and the appellate courts will not disturb the sentence. Commonwealth v. Gibson, 716 A.2d 1275, 1277 (Pa. Super. 1998).

In the instant case, the Defendant's minimum and maximum sentences were set at the statutory maximums. Unquestionably, the sentences imposed did *not*

---

Ex. 4).

8

exceed the statutory limits. Therefore, the Defendant's sentence must be evaluated to determine if it was "manifestly excessive." To do so, the following considerations must be examined:

> In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference. Commonwealth v. Ellis, 700 A.2d 948, 958 (Pa. Super. 1997). Where an excessiveness claim is based on a court's sentencing outside the guideline ranges, we look, at a minimum, for an indication on the record that the sentencing court understood the suggested sentencing range. 42 Pa. C.S.A. § 9721(b). When the court so indicates, it may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, the gravity of the particular offenses as it relates to the impact on the life of the victim and the community, so long as the court also states of record the factual basis and specific reasons which compelled him to deviate from the guideline range.

Commonwealth v. Mouzon, 828 A.2d 1126, 1128 (Pa. Super. 2003) (citations omitted).

Moreover, "[i]t is well-settled that appeals of discretionary aspects of a sentence are not reviewable as a matter of right." Commonwealth v. Ladamus, 896 A.2d 592, 595 (Pa. Super. 2006); see also Commonwealth v. Shugars, 895 A.2d 1270, 1274 (Pa. Super. 2006); Commonwealth v. McNabb, 819 A.2d 54, 55 (Pa. Super. 2003). The defendant must demonstrate that a substantial question exists concerning the sentence. Commonwealth v. Lee, 876 A.2d 408, 411 (Pa. Super. 2005). Furthermore, a substantial question requires something more than an allegation that the sentences imposed are excessive or harsh. Ladamus, 896 A.2d at 595. Consequently, Defendant's assertion that this Court abused its discretion by

9

imposing an excessive and harsh sentence fails to present a substantial question to justify a review of his claim.

Additionally, even if the merit of the Defendant's sentencing claim were addressed, Defendant's argument must fail. The Defendant's sentence must initially be evaluated to determine if there was an abuse of discretion. Commonwealth v. Walls, 926 A.2d 957 (Pa. 2007). The standard of review has been explained in the following manner:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Commonwealth v. Fullin, 892 A.2d 843, 847 (Pa. Super. 2006), *citing* Commonwealth v. Rodda, 723 A.2d 212, 214 (Pa. Super. 1999)(en banc).

In imposing the Defendant's sentence, this Court considered the "protection of the public, the gravity of the offense as it relates to the impact on the victim and the community, the defendant's rehabilitative needs, and the sentencing guidelines." 42 Pa. C.S.A. § 9721(b); Commonwealth v. Feucht, 955 A.2d 377, 383 (Pa. Super. 2008).

Prior to sentencing, this Court carefully reviewed the Pre-Sentence Investigation Report prepared on February 26, 2016. Therefore, this Court did not fail to consider mitigating factors. Commonwealth v. Devers, 519 Pa. 88, 546 A.2d 12 (1988) (holding that where a pre-sentence report exists, there is a presumption that the sentencing judge was aware of and adequately considered information relevant to

10

the defendant's character, as well as any mitigating factors). Indeed, this Court was cognizant of the Defendant's prior criminal history which included thirteen (13) arrests and eight (8) convictions; his incurring of four (4) misconducts while in the Lehigh County Jail; his arrogant and defiant tone that he took with the Presentence Investigation officer; and the recommendation of the Presentence Investigation Officer.

This Court set forth its reasons on the record for imposing the maximum sentence allowable by law. Specifically, (1) the Defendant is a danger to society; (2) the Defendant has a violent prior criminal history; (3) the duration of the criminal activity involved in the within matter; (4) the Defendant's poor potential for rehabilitation; (5) the victim was extremely vulnerable because of her drug addiction; and (6) the Defendant's lack of acceptance of any responsibility. Using its discretion, this Court imposed a sentence that was within the statutory limits and in compliance with the law.[15]

Additionally, the Defendant maintains that the offenses of Human Trafficking and Promoting Prostitution merge for sentencing purposes. The Defendant's assertion is without merit. The elements necessary to establish the crime of Trafficking in Individuals and Promoting Prostitution are set forth in 18 Pa. C.S.A.

---

[15] Additionally, it is axiomatic that the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court. Commonwealth v. Booze, 953 A.2d 1263, 1279 (Pa. Super. 2008). Long-standing precedent recognizes that 42 Pa. C.S.A. § 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. 42 Pa. C.S.A. § 9721. See also Commonwealth v. Johnson, 961 A.2d 877, 880 (Pa. Super. 2008); Commonwealth v. Marts, 889 A.2d 608, 612 (Pa. Super. 2005). "A challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary aspects of sentence." Commonwealth v. Lloyd, 878 A.2d 867, 873 (Pa. Super. 2005). Indeed, the Superior Court of Pennsylvania has stated: "We see no reason why [a defendant] should be afforded a 'volume discount' for his crimes by having all sentences run concurrently." Commonwealth v. Hoag, 445 Pa. Super. 455, 665 A.2d 1212, 1214 (1995).

§ 3011(a)(1), 18 Pa. C.S.A. § 3011(a)(2), and 18 Pa. C.S.A. § 5902(b)(3), respectively, which provide in pertinent part:

> 18 Pa. C.S.A. § 3011(a)(1), **Trafficking in Individuals**:
>
> A person commits a felony of the second degree if the person:
> recruits, entices, solicits, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to involuntary servitude
>
> \*\*\*
>
> 18 Pa. C.S.A. § 3011(a)(2), **Trafficking in Individuals**:
> A person commits a felony of the second degree if the person:
>
> knowingly benefits financially or receives anything of value from any act that facilitates any activity described in paragraph (1).
>
> \*\*\*
>
> 18 Pa. C.S.A. § 3001, Definition of Involuntary Servitude:
> labor servitude or sexual servitude
>
> \*\*\*
>
> 18 Pa. C.S.A. § 5902(b)(3), **Promoting Prostitution**:
> A person who knowingly promotes prostitution of another commits a misdemeanor or felony as provided in subsection (c) of this section. The following acts shall, without limitation of the foregoing, constitute promoting prostitution:
>
> (3) encouraging, inducing, or otherwise intentionally causing another to become or remain a prostitute

18 Pa. C.S.A. § 3011(a)(1), 18 Pa. C.S.A. § 3011(a)(2), and 18 Pa. C.S.A. § 5902(b)(3).

In the instant case, the jury found the Defendant guilty of two (2) distinctly individual crimes, albeit arising out of the same principal events. It is well-settled law that when a defendant commits multiple criminal acts beyond that which

12

is necessary to establish the fair limits of the additional crime, the defendant is guilty of multiple crimes which do not merge for sentencing purposes. Commonwealth v. Huckleberry, 429 Pa. Super. 146, 631 A.2d 1329 (1993). One test for determining whether one offense merges into another for sentencing purposes is whether one crime necessarily involves the other. Id. That is, whether the essential elements of one crime must also be the essential elements of the other crime. Commonwealth v. Wise, 298 Pa. Super. 485, 444 A.2d 1287 (1982); 42 Pa. C.S.A. § 9721. If more than one single criminal act was committed, there will be no merger and a sentence will be imposed for each act. Commonwealth v. Sayko, 333 Pa. Super. 265, 482 A.2d 559, *sentence reinstated*, 511 Pa. 610, 515 A.2d 894 (1984).

In the instant case, the crime of Promoting Prostitution does not necessarily involve the crime of Trafficking in Individuals, as all of the essential elements of Promoting Prostitution are not included in the offense of Trafficking in Individuals. The converse is true as well. Therefore, as the Defendant committed more than one single criminal act, a sentence should be imposed for each of the offenses and the merger of the sentences in this case would be improper. Accordingly, the Defendant's Motion to Modify and Reduce Sentence is denied.

Based on the foregoing, the Defendant's Post Sentence Motions are denied.

13